HARRY O. ALEXANDER *vs*. NEAL E. McPECK & others.

Suffolk.   December 5, 1904. — September 8, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Contract*, Construction, Validity. *Equity Jurisdiction*, Specific performance, To reach
and apply equitable assets. *Devise and Legacy*, Construction. *Words*, "Legal
representatives."

A contract under seal by which a continuing partner and a new partner of a firm
of brokers "do hereby release, remise and forever discharge" a retiring part-
ner "from the payment of all debts, agreements and liabilities of every name,
nature and description contracted by the firm . . . previous to the date of these
presents," is a contract to assume and discharge all the debts, agreements and
liabilities of the old firm.

A contract by a continuing partner and a new partner of a firm of brokers with a
retiring partner, to assume and discharge all the debts and liabilities of the old
firm, includes the liability on an action then pending against the old firm under
R. L. c. 99, § 4, to recover money paid on margins, and the retiring partner may
maintain a suit in equity to compel the new partner to pay and discharge the
judgment obtained in such action as soon as it is entered, although the judg-
ment is entered upon default and the new partner has not been vouched in to
defend the action, of which he has knowledge, and although the retiring partner
has not paid the judgment.

The enforcement of a contract to assume and pay the liabilities of a firm of brokers
in actions brought under R. L. c. 99, § 4, to recover money paid on wagering
contracts, is not contrary to public policy.

The ordinary meaning in a will of the words "legal representatives" is "execu-
tors and administrators," and they are to be given that meaning unless there is
something in the will to show that they have some other meaning.

Vested rights in equitable contingent remainders are subject to equitable attach-
ment under R. L. c. 159, § 3, cl. 7.

If a will provides that a certain portion of a fund upon the death of a beneficiary
for life shall be paid to a certain person if then living or if he is not then living
to his issue then living, "and, in default of his issue then living, to his legal rep-
resentatives," and if another clause of the same will gives to the same person the
income of another fund during his life, made inalienable, and provides that on
his death that fund shall go to his issue living at the time of his death, "and in
default of his issue then living, to his legal representatives," such person has an
interest in the first named fund contingent on his surviving the beneficiary for
life and another interest in the same fund for his executors or administrators
contingent on his dying before the beneficiary for life and having no issue then
living, and has in the second named fund, in addition to his inalienable income
during his life, the right, contingent on his leaving no issue living at his death,
to have that fund turned over to his executors or administrators as part of his
estate, and all of these contingent interests, being vested rights in equitable con-

tingent remainders, are property which can be reached and applied by a creditor in a suit in equity under R. L. c. 159, § 3, cl. 7, their value to be ascertained by sale or by some other means "within the ordinary procedure of the court."

BILL IN EQUITY, filed March 11, 1903, by a former partner of the firm of McPeck and Company, stock and bond brokers in Boston, against Neal E. McPeck, the plaintiff's former partner, and Hammond Braman, a new partner of McPeck, with other defendants, to compel the specific performance of an agreement under seal made by McPeck and Braman, alleged to be an agreement to assume and pay all debts and liabilities of the old firm, by discharging a judgment obtained against McPeck and the plaintiff, as partners of the firm of McPeck and Company, by one Mary Humphrey for $1,122.03 damages and $36.99 costs in an action brought by her on December 27, 1901, under St. 1890, c. 437, St. 1901, c. 459, (now R. L. c. 99, § 4,) to recover money alleged to have been paid as margins on wagering contracts, and against the trustees under the will of Grenville T. W. Braman, late of Cohasset, under R. L. c. 159, § 3, cl. 7, to reach and apply to the discharge of the above named judgment the equitable interests of the defendant Hammond Braman under the provisions of that will.

The case was heard by *Loring*, J.

The agreement sought to be enforced was as follows:

"Know all men by these presents that we Neal E. McPeck and Hammond Braman, co-partners doing business under the firm name and style of McPeck & Company, stock and bond brokers at 60 State Street, Boston, Mass., for a valuable consideration, do hereby release, remise and forever discharge Harry O. Alexander of Boston from the payment of all debts, agreements and liabilities of every name, nature and description contracted by the firm of McPeck & Company, of which the said Alexander was a partner, previous to the date of these presents.

"Witness our hands and seals, this fifth day of February, 1902.

"Neal E. McPeck        [Seal]
Hammond Braman."        [Seal]

The material portions of the will of Grenville T. W. Braman are quoted in the opinion.

The justice made the following memorandum of decision:

"I find that before February 5, 1902, the plaintiff and the defendant McPeck had been partners, and that on that day that firm was dissolved and a new firm was created between McPeck and the defendant Braman. The new firm took over the assets of the old firm and its business, and at the same time the instrument a copy of which is annexed to the bill [Exhibit A, the agreement printed above] was executed and delivered to the plaintiff. I also find as a fact that the pendency of the action of Humphrey *v.* McPeck et al., was called to the attention of the defendant Braman when said Exhibit A was executed, and that in July, 1902, he was notified of the pendency of the action by the attorney who originally appeared for the defendants in that action and who did not withdraw his appearance until the following September.

" No evidence of collusion was introduced by the defendants, and the defence of *res adjudicata* was abandoned at the trial.

"I rule as matter of law that by Exhibit A the defendants McPeck and Braman agreed to assume and pay all debts, agreements, and liabilities of the old firm (see *Dorsey* v. *Dashiell,* 1 Md. 198, and *Griffith* v. *Buck,* 13 Md. 102, 114) ; and I rule, in connection with the facts found by me, that the liability of the plaintiff in the action of Humphrey *v.* McPeck et al. was covered by said agreement. It is settled that a liability under St. 1890, c. 437, can be released. *Wall* v. *Metropolitan Stock Exchange,* 168 Mass. 282. That, in my opinion, is decisive of the objection that it cannot be assumed.

" The plaintiff is entitled to a decree directing the defendants to pay the plaintiff the amount of the judgment in Humphrey *v.* McPeck et al., with interest from January 5, 1903, together with the costs of this suit.

"I find as a fact that the plaintiff Alexander has not paid said judgment, and rule that he can maintain this bill in equity without making such payment on the rule of *Furnas* v. *Durgin,* 119 Mass. 500."

The justice made a decree that the defendant Hammond Braman should pay to the plaintiff the amount of the judgment in the case of Humphrey *v.* McPeck et al., with interest from January 1, 1903, together with the costs of this suit. The defendant Hammond Braman appealed, and the justice reserved the case

upon the appeal and the questions of law raised by the demurrers of the trustees under the will of Grenville T. W. Braman, such decree to be entered as justice and equity might require.

The case was argued at the bar in December, 1904, before *Knowlton*, C. J., *Morton*, *Lathrop*, *Barker*, & *Loring*, JJ., and afterwards was submitted on briefs to all the justices.

*H. W. Ogden*, for the defendant Hammond Braman.

*R. T. Hay*, for the trustees under the will of Grenville T. W. Braman.

*J. Noble, Jr.*, for the plaintiff.

HAMMOND, J.   At the hearing on the merits the defence set up by Hammond Braman that the rights claimed by the plaintiff had been adjudicated against him in the receivership proceedings was abandoned; and there was no evidence that the instrument of February 5, 1902, was procured by fraud or misrepresentation.

The case has two main branches, the first relating to the obligation assumed by Hammond Braman by the agreement of February 5, 1902, and the second relating to the question whether his interest in the trust funds under his father's will can be reached and applied so far as necessary to the payment of the judgment.

1. As to the agreement.   Braman contends that under it he did not assume the liabilities of the old firm and agree to pay the old debts and obligations, or that, in any event, his liability is limited to reimbursing the plaintiff for such sums as he actually has paid out.

While the words " release, remise and forever discharge " were not the most appropriate to be used under the circumstances then existing, still they are to be given a meaning which will effectuate the plain intention of the parties, and so they must be construed to be an agreement to assume and discharge all the debts, agreements and liabilities of the old firm. In no other way could Braman release and discharge Alexander from the obligations contracted by the old firm. *Dorsey* v. *Dashiell*, 1 Md. 198, 203, 206.   *Griffith* v. *Buck*, 13 Md. 102, 114. So construed, the instrument is something more than a mere contract of indemnity.   A contract to assume and pay a liability is a contract to pay it forthwith, if it is due when the contract to assume is made, or, if not then due, when it shall become due;

and it gives to the party in whose favor it is made a right of action as soon as the debt has matured, whether or not he has paid it himself. *Furnas* v. *Durgin*, 119 Mass. 500. *Locke* v. *Homer*, 131 Mass. 93. Under the doctrine of these cases, the plaintiff's right against Braman in respect of the Humphrey demand and the judgment rendered on it was complete, at the latest, when the judgment was entered, notwithstanding the fact that the plaintiff made no payment upon it. *Nichols* v. *Prince*, 8 Allen, 404, cited by the defendant, does not decide that the suit could not have been maintained before payment, and the question whether the agreement to " discharge" the retiring partner " from all liabilities" should be construed as an agreement to assume and pay them was not before the court.

It is further contended in defence that the instrument does not extend to such a claim as was presented in the Humphrey suit. Assuming that at common law there could have been no recovery upon such a claim, still the right to recover in such a case is given by statute. St. 1890, c. 437. St. 1901, c. 459. R. L. c. 99, § 4. The right so given imposed a corresponding obligation upon the defendants in the Humphrey suit to pay, and that obligation was a debt or liability contracted by the old firm before the date of the instrument in question. The assumption of the liability by Braman was not in contravention but in furtherance of the purposes of the statute. Public policy does not require the refusal to enforce an agreement to assume and pay such a liability. It can be released, (*Wall* v. *Metropolitan Stock Exchange*, 168 Mass. 282,) and it can be assumed.

It is still further contended by the defence that this action cannot be maintained because Braman was not vouched in to defend the Humphrey suit and final judgment therein was entered upon default. Braman however agreed to assume and pay that liability. At the time he signed the agreement he was informed of the pendency of the action, and he was again informed of it after the appeal to the Superior Court and before the withdrawal of the appearance of the attorney who had been employed by the old firm for the defence. If he desired to have the action defended, it was his duty to take the proper measures to that end. There is no evidence of collusion in suffering judgment to be entered. He cannot now complain

that Alexander, whom he had agreed to discharge from this liability, did not continue to defend the suit. See *Tracy* v. *Maloney*, 105 Mass. 90; *Cutter* v. *Evans*, 115 Mass. 27; *Tapley* v. *Goodsell*, 122 Mass. 176; *Curtiss* v. *Curtiss*, 182 Mass. 104.

The contentions made in the original answer of Braman that the instrument of February 5, 1902, was void as being part of an inducement held out to him to enter upon an illegal business, and that the liability of the old firm to Humphrey had been released by an instrument of December 26, 1901, are not renewed in the substituted answer and we treat them as waived.

Upon this branch of the case the result is that the decree that Hammond Braman shall pay to the plaintiff the amount of the Humphrey judgment with interest, together with the costs of this suit, should be affirmed.

2. As to whether the interest of Hammond Braman in the trust funds held under the will of Grenville T. W. Braman can be reached to enforce this payment. For convenience in this branch of the case we shall call Hammond Braman only by his first name, to distinguish him from the other members of the family to which he belonged.

The executors of the will allege that they have transferred to the trustees all the funds in which Hammond had any interest. We do not understand that the plaintiff desires to controvert this. The bill, therefore, should be dismissed against Susie A. Braman, who is summoned simply as executrix, and as against Elmer P. Howe and Grenville D. Braman, who are summoned as executors and trustees, so far as they are executors.

The will is of considerable length, and is drawn with some care. After giving certain personal property to his wife Susie A. Braman, the testator gives all the residue in trust. Of the trusts in which Hammond is interested the first is contained in the second article in clause (a), and is as follows: "If my said wife shall survive me, to set apart and invest in trust as a fund, property to be selected and valued by my said trustees, which shall amount to one third of the estate and property given to said trustees, or money to that amount, and to pay the net income thereof as often as once in six months to my said wife during her life, and at the death of my said wife to convert the principal of the said third of such estate and property into

money and to divide the same in three equal parts . . . [and after directing the payment of two such portions to his son Grenville and his daughter Caroline or their appointees or legal representatives] . . . to pay over the remaining part thereof to my son Hammond Braman, if he shall survive my said wife, or if he shall die before her, to his issue living at the time of her death by right of representation, and in default of his issue then living, to his legal representatives."

With reference to this clause it appears that the widow is still living.

The second trust is in clause (d) of the same article, and is as follows: " If my said son Hammond shall survive me, to set apart and invest as another trust fund, the sum of fifty thousand dollars, in money or in property selected and valued at that amount by my said trustees, and to pay over as often as once in six months the net income of this trust fund to my said son Hammond during his life, upon his sole receipt and not in compliance with any assignment or anticipation, and at his death to pay over, transfer and convey the principal of this trust fund to his issue living at the time of his death, by right of representation, and, in default of his issue then living, to his legal representatives."

The third is in clause (e) of the same article, and is as follows: " As soon as practicable after my decease, to convert into money all the residue of my estate and property not hereinbefore disposed of, and to divide the same into three equal parts . . . [and after directing the payment of two such parts to his son Grenville and his daughter Caroline, or their issue or legal representatives] . . . to pay over the remaining part to my said son Hammond if he shall survive me, or if he shall die before me, to his issue living at the time of my death by right of representation, and in default of his issue then living, to his legal representatives."

R. L. c. 159, § 3, cl. 7, provides that a creditor can reach in equity " any property, right, title or interest, legal or equitable, of a debtor, . . . which cannot be reached to be attached or taken on execution in an action at law, although . . . the property sought to be reached and applied . . . cannot be reached and applied until a future time or is of uncertain value, if the

value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court."

The plaintiff now concedes that under the doctrine of *Broadway National Bank* v. *Adams,* 133 Mass. 170, he cannot reach the income of the trust fund payable to Hammond under clause (d). He contends however that he can reach the interest of Hammond in the principal of each of these funds.

As Hammond survived his father, his interest in the residuary fund named in clause (e) vested in him immediately as his absolute property, and was liable to be taken by his creditors. This the trustees now concede, but they allege that by a deed dated November 12, 1902, he, as security for money to the amount of $30,000 advanced by them to him, assigned to them all his said interest subject to two prior assignments which he had made to secure other creditors.

In consequence of the demurrer of the plaintiff this allegation is to be taken as true, but as the amount of the fund is not alleged it now cannot be assumed that the whole of Hammond's interest will be required to satisfy the terms of these various assignments. The plaintiff is therefore entitled to a decree in his favor with reference to Hammond's interest in that fund. The terms of the decree cannot be settled upon the information now before the court, and must be settled in further proceedings before a single justice.

The plaintiff concedes that he has no present right to demand a termination of the trust held under clause (a) or of that held under clause (d), or to have any portion of the principal of either of these two funds now applied to the payment of his claim. The remaining question therefore is whether the interest of Hammond in the principal of either of those two funds is such that the plaintiff is entitled to have it applied, so far as may be necessary, in a just and equitable manner to the extinguishment of his claim.

Clause (a) provides that at the death of the testator's widow one third of the fund shall be paid to Hammond if then living, or if he is not then living, to his issue then living, "and in default of his issue then living, to his legal representatives."

Clause (d) provides that at the death of Hammond the fund held under the clause shall be paid over to his issue then living,

" and, in default of his issue then living, to his legal representatives." Contingent gifts to " legal representatives " of another son and daughter of the testator are also provided for in clauses (b) and (c) of the same article, which direct the trustees to set apart two funds of $50,000 each, and to pay the income of one fund to the other son, and of one fund to the daughter, in each instance upon the sole receipt of the life tenant and not in compliance with any assignment or in anticipation.

One question involved is the meaning to be given to the words " to his legal representatives " in that portion of clause (a) which deals with the Hammond Braman third of the trust for the widow, and in clause (d). The phrase is used in the will nine times, and is the only one used by the testator to designate the final beneficiaries of the five separate trust funds which he orders his trustees to set apart. We find nothing to indicate that it is not used in the same sense in each of the nine instances.

The ordinary meaning of the words " legal representatives " is " executors and administrators," and they are to be given that meaning unless there is something in the will properly construed to show that they should have some other meaning. *Cox* v. *Curwen*, 118 Mass. 198. There is nothing in the terms of the will or the circumstances of the testator or his family, so far as appears, to indicate that he used the words in any other than their ordinary sense. On the contrary, in the third article he says that his omission to provide for the issue of his son Grenville is intentional. In each of the three bequests for the benefit of Grenville, however, the final direction is to pay " to his legal representatives." If those words are to be given another than their ordinary meaning of " executors and administrators," and are to be construed to mean either heirs at law, or distributees under the statute of distribution, if Grenville should die leaving issue, such issue would be included among his heirs at law and distributees, and so would be provided for by the testator without any action on the part of Grenville if he should die without making an appointment by will.

We therefore construe the last provision of clause (a) as a gift to Hammond of one third of the widow's fund if Hammond survive her; if he dies before her, leaving issue, to his issue then living; and in default of his issue then living, to his executors or administrators.

The last provision of clause (d) is to have a similar construction, and in the event of his dying leaving no issue then surviving, the fund provided for in clause (d) is to go to his executors or administrators.

He has two interests in one third of the widow's fund ; first, a right to take it as his own if he survives her, and, second, the right to have it administered as a part of his estate by his own executors or administrators if he dies before his mother and if he has no issue then living.

Besides his right (which it is properly conceded cannot be reached in this suit) to the income of the $50,000 fund for life under clause (d) he has also the right to have that fund turned over to his own executors or administrators as part of his own estate, if when he dies he leaves no issue then living.

Each of these rights is contingent, the first upon his surviving the widow, the second upon his dying before her and leaving no issue surviving her, and the third upon his having no issue living at the time of his death. His interest in each right is now vested in the sense that he owns the right. If in their nature they are property, they are his property. There can be no doubt that although each is a vested right in an equitable contingent remainder, it is capable of being alienated by him and of passing by assignment in insolvency or bankruptcy. *Putnam* v. *Story,* 132 Mass. 205, and cases cited. *Daniels* v. *Eldredge,* 125 Mass. 356. Such a right is property. It is within the meaning of the word as used in R. L. c. 168, § 22, which provides that if it appears upon the examination of a judgment debtor that he has property which cannot be taken on execution he "shall be required to execute and deliver to the judgment creditor . . . a transfer, assignment or conveyance thereof, in such form as the magistrate orders. Since it "cannot be reached to be attached or taken on execution in an action at law," the fact that neither the debtor nor the creditor, if the right is transferred to him, nor the purchaser if it is sold, can get any portion of the corpus of the trust fund until some future time, is not under the statute fatal to the plaintiff.

But it is strongly contended in behalf of the defence that such a right is of "uncertain value" within the meaning of the statute, and therefore cannot be reached by proceedings under it.

In a sense it is true that it is of uncertain value, but this phrase is to be read in the light of its context and the history of the statute. Before 1884 it had been held that under Gen. Sts. c. 113, § 2, cl. 11, which provided that a creditor might reach in equity "any property, right, title, or interest, legal or equitable, of a debtor, within this state, which cannot be come at to be attached or taken on execution in a suit at law," this court would not take jurisdiction under the statute unless the claim of the creditor was equal to one hundred dollars; *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478; that the statute did not apply where the property sought to be reached was wholly in the possession of the debtor; *Phœnix Ins. Co.* v. *Abbott*, 127 Mass. 558; or where it was an interest in an equitable remainder; *Bartholomew* v. *Weld*, 127 Mass. 210; *Russell* v. *Milton*, 133 Mass. 180; or where it was a patent right. *Carver* v. *Peck*, 131 Mass. 291.

After these various decisions, St. 1884, c. 285, now R. L. c. 159, § 3, cl. 7, was passed. Upon reading this statute it plainly appears that the Legislature intended to change the law as declared by these and other like decisions with reference to the rights of property which a creditor might reach by proceedings in equity and to give the broadest scope to such proceedings. Within the meaning of the statute the property right is not of uncertain value "if the value can be ascertained by sale, appraisal, or by any means within the ordinary procedure of the court."

In view of the history of the statute, the fact that the rights of Hammond are now vested in him as his property and are capable of being conveyed by him and of passing to his assignee in insolvency or bankruptcy solely for the benefit of his creditors; that he as a judgment debtor could be compelled under poor debtor proceedings to make an assignment or conveyance of them; and of the express language of the statute, we are of opinion that the statute should be broadly construed and that if the value of either of these rights can be ascertained either by sale or appraisal, it is within the statute; and that for the purposes of the statute the value of each of them can be ascertained by sale or by some other means within the ordinary procedure of the court. Upon this part as upon the other, therefore, there must be a decree for the plaintiff, and it is

*So ordered.*