**ROCK–OLA MFG. CORPORATION et al. v. FILBEN MFG. CO., Inc. et al.**

No. 13695.

Circuit Court of Appeals, Eighth Circuit.

July 6, 1948.

Rehearing Denied Aug. 16, 1948.

Thomas H. Sheridan, of Chicago, Ill. (Bergmann Richards, of Minneapolis, Minn., on the brief), for appellants.

John J. McKasy, of Minneapolis, Minn., for appellees.

Before GARDNER, WOODROUGH, and COLLET, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment denying appellants' prayer for a declaratory judgment in an action charging appellees with the violation of a patent license contract. We shall refer to the Rock-Ola Manufacturing Corporation of the State of Delaware as plaintiff, and to the appellees as defendants.

At and prior to entering into the license agreement hereinafter described, the plaintiff or its predecessor in interest manufactured and sold phonographs of the Rock-Ola type, as more particularly disclosed and claimed in United States Letters Patent Application No. 22,701, while the defendants or their predecessor in interest manufactured for sale and use phonographs of the so-called Filben type, as more particularly disclosed and claimed in United States Letters Patent Application No. 153,772. Each of these parties being so engaged, they, on September 28, 1938, entered into an agreement by which each granted to the other a license to embody the inventions then owned or controlled, or which during the life of the agreement might be owned or controlled, by the other party in phonographs manufactured by the other. This action has to do only with the license to the predecessor of the defendants and the controversy centers upon paragraphs 1 and 4 of the license agreement, which read as follows:

"1. Rock-Ola hereby grants to Filben a non-exclusive indivisible license to manufacture phonographs of the Filben type embodying any or all phonograph inventions now owned or controlled by Rock-Ola or hereafter during the life of this Agreement owned and controlled by Rock-Ola and to use and sell such phonographs within and throughout the United States of America, subject to the terms and conditions hereinafter set forth.

\* \* \* \* \* \*

"4. The license herein granted to Filben shall be non-transferable except to a corporation organized and controlled by Filben or except to Filben's heirs or legal representatives. The license herein granted to Rock-Ola shall be non-assignable except to a successor corporation of Rock-Ola or a successor to the whole of the phonograph business of Rock-Ola."

At the time of entering into this contract William M. Filben was doing business under the trade name and style of Filben Manufacturing Company and Automatic Phonograph Company. He departed this life intestate on May 1, 1940. No corporation had been organized by him and no assignment of his rights under the license contract had been made before his death. By action of the Probate Court of Ramsey County, Minnesota, Filben's rights under the agreement were declared to be vested in his widow, Berniece Filben, in

the amount of an undivided one-third interest, and in his three minor daughters in the amount of an undivided two-ninths each. The widow, Berniece Filben, was thereupon appointed guardian for the three minor heirs, and on October 24, 1945, she, on behalf of herself and as guardian for the heirs, assigned the entire right, title and interest in the license agreement to the defendant Filben Manufacturing Company, Inc., in consideration of 51 per cent of the stock in said corporation.

Following the death of William M. Filben the business of manufacturing phonographs was carried on for the heirs by one Leonard E. Baskfield, operating under the fictitious trade name of Filben Manufacturing Company. On the organization of the defendant Filben Manufacturing Company, Inc., Baskfield was made president, with a 49 per cent stock interest, and he had charge of the affairs of the corporation.

On November 1, 1945, which was after the organization of the Filben Manufacturing Company, Inc., an agreement was entered into between that company and Batavia Metal Products, Inc., for the manufacture of Filben phonographs by the Batavia Corporation for the Filben Manufacturing Company, Inc. This contract contains recitals as to the rights of the Filben Company under the Rock-Ola-Filben agreement.

On November 2, 1946, Baskfield, for the Filben Company, entered into an agreement with the U. S. Challenge Company, whereby the latter company contracted to purchase all the phonographs produced by or for the Filben Company. There was also evidence that the Filben Company entered into a contract with Sam Mannarino, which contract was dated October 23, 1946, for the manufacture of Filben phonographs by Mannarino, the contract purporting to give him the right to have others manufacture for him. While this contract was in form executed, there was doubt whether or not it had become effective by delivery.

It was the claim of plaintiff in the trial court, and it renews the contention here, that the transfer by the Filben heirs of their rights under the license contract to the defendant Filben Manufacturing Company, Inc., and the effort made by the Filben Company to vest other companies with the right to manufacture phonographs under the Rock-Ola-Filben agreement, and likewise the right to sell such phonographs, was violative of the license agreement between Rock-Ola and Filben.

The trial court held in effect that the Filben heirs had the right to assign their rights under the license contract to the defendant Filben Manufacturing Company, Inc., and that in turn that company had the right to contract with others to manufacture phonographs for it, and that it had the right to contract with others to sell such phonographs for it.

In seeking reversal plaintiff contends in substance: (1) That the court erred in finding that it was the intention of the original parties under the license agreement to grant the heirs of Filben the right to transfer their license rights thereunder to a corporation controlled by them; (2) that the court erred in holding by implication that the defendant Filben Manufacturing Company, Inc., succeeded by valid transfer to the license rights of the Filben heirs; (3) that the court erred in holding that the license agreement does not prohibit the Filben Manufacturing Company, Inc., from contracting with others to manufacture or to sell for it phonographs embodying inventions coming within the terms of the license agreement.

The parties to the license agreement were sui juris; each of them was represented by his own counsel during the negotiations leading up to the making of the agreement and at the time of its execution. There was no claim of overreaching, fraud, nor mutual mistake. The rights of the respective parties are therefore dependent upon the contract, and unless that instrument is ambiguous the intention of the parties must be determined by the words of the contract, unaided by oral testimony. Westinghouse Electric & Manufacturing Co. v. Tri-City Radio Electric Supply Co., 8 Cir., 23 F.2d 628.

The contract in the instant case deals with the rights that inure to a patentee under United States letters patent. The owner of a valid patent is vested with the exclusive right of making, using and

selling a patented article, and all or any one of these rights may be the subject of license. General Talking Pictures Corporation v. Western Electric Co., 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273; Carbice Corporation v. American Patents Development Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. The mere granting of a license to make, use or sell a patented article does not confer upon the licensee the right to transfer his license unless the patentee has consented thereto. Hapgood v. Hewitt, 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 380; Oliver, Finnie & Co. v. Rumford Chemical Works, 109 U.S. 75, 3 S.Ct. 61, 27 L.Ed. 862; Troy Iron & Nail Foundry v. Corning, et al., 14 Howard 193, 14 L.Ed. 383; Westinghouse Electric & Mfg. Co. v. Tri-City Radio Electric Supply Co., supra; Reynold Spring Co. v. L. A. Young Industries, Inc., 6 Cir., 101 F.2d 257; Walker on Patents (Deller's Ed.,) Sec. 388. It is to be observed that the license contract here leaves no room for doubt on this question because it specifically provides that,

"The license herein granted to Filben shall be non-transferable except to a corporation organized and controlled by Filben or except to Filben's heirs or legal representatives."

In Westinghouse Electric & Mfg. Co. v. Tri-City Radio Electric Supply Co., supra [8 Cir., 23 F.2d 630], this court considered a license contract which granted "a nonexclusive nontransferable license to manufacture the apparatus and to sell the apparatus of the licensee's manufacture." In that case the agreement included a provision that the license "shall not be transferable by the licensee, by operation of law or otherwise." The court expressed the view that the license was clear and unambiguous and that it restricted defendant's right to manufacture for its own sales and that it restricted the sales to apparatus of its own manufacture.

Under the contract in the instant case, Filben had the right to transfer his nonexclusive license to a corporation controlled by him, or to his heirs or legal representatives

In Oliver, Finnie & Co. v. Rumford Chemical Works, supra, the owner of a patent granted an exclusive license running for five years to manufacture the patented product. The patent contained limitation as to territory. The licensee, soon after the execution of the license agreement, died and his widow subsequently remarried. Suit was brought for infringement of the patent on the theory that the right secured under the license vested in the widow-administratrix. In the course of the opinion it is said [109 U.S. 75, 3 S.Ct. 65]:

"It is well settled that a transfer of a right such as Morgan acquired is not an assignment, nor such a grant of exclusive right as the statute speaks of, but is a mere license. * * * This being so, the instrument of license is not one which will carry the right conferred to any one but the licensee personally, unless there are express words to show an intent to extend the right to an executor, administrator, or assignee, voluntary or involuntary."

■■ It is therefore necessary to consider the words of the contract containing the exception. After providing that the license to Filben shall be non-transferable the contract reads, "except to a corporation organized and controlled by Filben or except to Filben's heirs or legal representatives." It is contended by defendants that they come within this exception and that the agreement granted to Filben's heirs at his death the same rights as were possessed by him during his lifetime. It is also suggested that the term "legal representatives" is not necessarily restricted to the personal representatives of a deceased person but may cover all persons who with respect to another's property stand in his place and represent his interest. The ordinary meaning of "legal representatives" is executor or administrator, and in the absence of something in the context to indicate a different meaning these words will be so construed. In re Worms' Estate, 159 N.Y.S. 732; Alexander v. McPeck, 189 Mass. 34, 75 N.E. 88; Page v. Metropolitan Life Ins. Co., Ark., 98 Ark. 340, 135 S.W. 911; Hamilton v. Darley, 266 Ill. 542, 107 N.E. 798. There is nothing in the context of this agreement to indicate that the term was not

used in its ordinary sense. At any rate, it could scarcely be argued, we think, that the defendant Filben Manufacturing Company, Inc., is the legal representative of the deceased William M. Filben. It is clear that under this contract Filben could have organized a corporation and assigned the license rights to it, but this he did not do. This construction, which seems compelled by the unambiguous terms of the contract, does not render the license valueless as suggested by defendants in their brief. The Filben heirs may personally enjoy the license which was granted Filben to manufacture, sell and use the patented inventions therein described, but the use is subject to the limitations imposed by the agreement, whatever they may be.

It is argued by defendants that the right of reformation may be used defensively and that it was so used here by defendants in the trial court. One of the troubles about this argument is that the trial court did not purport to grant reformation of the contract but construed it as granting to the Filben heirs the same rights as were possessed by him during his lifetime, including the right to transfer to a corporation organized and controlled by them. There is nothing to indicate that the court reformed the contract as written; neither did the defendants seek such reformation.

■■ Reformation of a contract can ordinarily be had only where the contract as executed fails to express the intention of the parties as the result of accident, inadvertence, mistake, fraud, or inequitable conduct, or where there has been both fraud and mistake, as a unilateral mistake induced by fraud. The mistake must be mutual, or a unilateral mistake induced by fraud. There must have been in effect an agreement which the written instrument evidences, and the mistake must have been in the drafting of the instrument, not in the making of the contract. Westinghouse Electric & Manufacturing Co. v. Tri-City Radio Electric & Supply Co., supra; Thompson v. Phenix Ins. Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982; Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 71 A.L.R. 128; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 125 A.L.R. 1053; Kruger v. Agnor, Mich., 32 N.W.2d 365.

■ In the instant case the contract was not hastily drawn; it was the product of the attorneys of both of the parties, and there is no claim that there was any fraud or overreaching by any of the parties, or that there was a mutual mistake. The most that can be said with reference to this testimony is that the attorney representing the interest of the defendants at the time of the negotiations leading to the execution of the license contract thought that the rights to be granted Filben should extend, in the event of his death, to his heirs, but the attorney for the plaintiff had no such thought, nor did Mr. Rockola, who represented the plaintiff and hence, there could have been no mutual mistake. As said by this court in Westinghouse Electric & Manufacturing Co. v. Tri-City Radio Electric Supply Co., supra,

"A license to use a patent is a contract and is, like other contracts, subject to reformation to conform to the intentions of the parties at the time of its execution where the form attacked is shown to have been executed through fraud or mutual mistake."

Conversely, unless there has been fraud or mutual mistake, the right of reformation does not exist. The issue presented is, therefore, purely a question of law.

In its complaint the plaintiff asked a declaratory judgment that defendant Filben Manufacturing Company, Inc., has and had no right to license anyone to manufacture phonographs under the Rock-Ola-Filben agreement and it is urged here that defendant Filben Manufacturing Company, Inc. violated the license agreement by contracting with others to manufacture the phonographs which were the subject of the license contract. In its conclusions of law the court declared that,

"The defendant, Filben Manufacturing Co., Inc. may contract with others to manufacture for it phonographs embodying the inventions mentioned and described in said license agreement."

The court also declared that the defendant company could contract with others to

924

sell the products described in the agreement.

By paragraph 1 of the agreement there was granted to Filben,

"* * * a non-exclusive indivisible license to manufacture phonographs of the Rock-Ola type embodying any or all phonograph inventions now owned or controlled by Rock-Ola * * * and to use and sell such phonographs within and throughout the United States of America, subject to the terms and conditions hereinafter set forth."

As we have already observed, a patent confers upon the patentee three distinct rights: (1) The right to manufacture; (2) the right to sell; (3) the right to use. Now, it appears from the contracts entered into by Filben Manufacturing Company, Inc., that it sought to vest the right to manufacture in one company and the right to sell in another company. The contract with Batavia Metal Products, Inc., provided for the manufacture of phonographs for Filben by Batavia in the initial amount of 10,000 of such phonographs. The contract also provided for redesigning by Batavia at its expense, in consideration of the Filben Company obtaining its entire requirements from Batavia. The agreement also contained provision that Filben,

"* * * will not without written consent of Batavia, manufacture or cause to be manufactured by any other source, any of its production needs or any equipment utilizing such patents."

This in effect was an attempt to transfer the right of the Filben Company to manufacture, retaining, apparently, the right to sell and use. Similarly, in its contract with U. S. Challenge Company, there was a provision for the sale of phonographs, the agreement providing that the Challenge Company should purchase all the production of phonographs by or for the Filben Company and that Filben Company was to sell its entire production to the Challenge Company.

The license contract uses the word "indivisible." The word can not be disregarded but should be given its usual meaning. This contract conferred upon the licensee, as we have heretofore ob-

served, three rights, and it is contended that these rights could not be divided up and parceled out, but must be preserved as an entity; hence, the right to manufacture could not be segregated from the other rights and transferred. Confessedly, Filben had no right to transfer his license, but if he could parcel out the rights conferred upon him by this license to various parties, he in effect could transfer the license or sublet it and thus circumvent the limitation against transfer. It is true that but for the limitation contained in the contract the rights could be assigned separately. But the very purpose of the use of the word "indivisible" was manifestly to withdraw that right from the licensee. Neither Filben, his heirs, the Filben Manufacturing Company, Inc., nor anyone related to them, had the right to divide and parcel out the rights acquired under the license agreement so as to vest the right to manufacture in an outsider, or so as to vest the right to sell in an outsider.

The judgment appealed from is therefore reversed and the cause remanded with directions to enter a declaratory judgment in favor of the plaintiff consistent with this opinion.