Paul F. MARKHAM, Trustee, Plaintiff,

v.

Claire M. FAY, as Trustee of Highland Avenue Nursing Home Trust, Parker Hill Nursing Home Trust, and Green Pastures Nursing Home Trust, Defendant, Appellant,

and

United States, Defendant, Appellee.

No. 95–1631.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1995.

Decided Feb. 7, 1996.

Richard H. Gens, East Dennis, MA, for appellant.

Annette M. Wietecha, Washington, DC, with whom Donald K. Stern, United States Attorney, Of Counsel, Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Washington, DC, and Jonathan S. Cohen, Attorney, Tax Division, United States Department of Justice, were on brief for appellee.

Before TORRUELLA, Chief Judge,
BOWNES, Senior Circuit Judge, and
STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

Appellant Claire M. Fay ("Fay"), in her capacity as trustee of three trusts, appeals the magistrate judge's ruling that a federal tax lien upon her individual property extends to the entire assets of the trusts. Fay contends that the magistrate judge erred because the property of the trusts would not be considered her own under Massachusetts law. Fay also raises federal statutory and constitutional issues, contending that Appellee Internal Revenue Service ("IRS") does not have a valid lien upon the trust property because it failed to comply with statutory notice and limitations requirements as to the trusts, and also that the trust beneficiaries were indispensable parties who were not joined and were deprived of property without due process of law. We hold that there was no statutory or constitutional error and that the magistrate judge correctly held that the lien attached to the entire property of the Green Pastures and Parker Hill Nursing Home Trusts. We also hold that the magistrate judge erred in holding that the lien attached to the entire property of the Highland Avenue Nursing Home Trust. Thus, we affirm in part, reverse in part, and remand for a new judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

In a published opinion, the magistrate judge made extensive findings of fact, *Markham v. Fay*, 884 F.Supp. 594 (D.Mass.1995), none of which are in dispute in this appeal. We recount those necessary to provide context to the issues before us.

During the 1960s and 1970s, Fay and others created a number of legal entities for the purpose, *inter alia*, of owning and operating nursing homes in Massachusetts. Three of those entities—the Green Pastures Nursing Home Trust, the Parker Hill Nursing Home Trust and the Highland Avenue Nursing Home Trust—are involved in this appeal.

Fay created the trusts in 1974, conveying to herself as trustee of each trust the nursing home for which the trust was named. A fourth entity, Regina Nursing Home, Inc. ("the corporation"), was incorporated in 1961. Fay became its president and sole stockholder in 1967, then assigned all of her stock to her sister Theresa Dzialo (Dzialo) sometime during the 1970s. The corporation owned the Chester Manor Nursing Home. At no time were the trusts and the corporation organized or operated as one entity, and each owned different property.

In June of 1976, Fay, as trustee of the trusts and president of the corporation, sold the Parker Hill, Green Pastures, Highland Avenue and Chester Manor Nursing Homes to trusts owned by Louis Almeida ("Almeida"), in exchange for mortgages and other consideration. Almeida filed for bankruptcy in 1978. By then, the only assets owned by the trusts and the corporation were the mortgages, and Almeida had defaulted on them. On October 2, 1990, the bankruptcy court awarded the trusts and the corporation, as secured creditors, the proceeds from the bankruptcy trustee's sale of the nursing homes, amounting to $67,809.89.

On October 10, 1990, the IRS filed a derivative claim with the bankruptcy court "for the purpose of obtaining any dividend which may become payable to Claire M. Fay." The IRS's claim was premised on Fay's individual tax liability. In 1979, in view of Almeida's bankruptcy, the IRS had assessed Fay individually as a "responsible person" under 26 U.S.C. §§ 6671 and 6672 for income and F.I.C.A. taxes Almeida failed to pay for the nursing homes' employees during the tax years 1976 through 1978.[1] On October 31, 1979, IRS filed a notice of federal tax lien for $200,213.45 against Fay individually, and re-filed it on January 27, 1986. In 1984, the IRS sued Fay individually, and on December 30, 1990, judgment was entered against her in the amount of $699,142.21, including penalties and interest.

On October 31, 1990, the IRS delivered to the bankruptcy trustee (but not to the corpo-

---

1. Fay apparently continued to be involved in managing the nursing homes after selling them

to Almeida. The efficacy of the assessment against her is not before us in this appeal.

ration) a notice of levy on the corporation as alter ego and/or nominee of Fay. The IRS did not file any liens, lawsuits or notices thereof against the trusts, Fay as trustee of the trusts, or the beneficiaries of the trusts.

On February 12, 1991, Paul F. Markham ("Markham"), the bankruptcy trustee who held the proceeds of the sale of the nursing homes, filed an interpleader action in Massachusetts Superior Court seeking a determination of the rights of the various claimants to the interpled fund. Markham named as defendants Fay individually and as trustee of the trusts, the corporation, the United States, and two attorneys seeking payment for litigating the claims of the trusts and the corporation before the bankruptcy court. On March 14, 1991, the IRS removed the case to the United States District Court for the District of Massachusetts. On May 5, 1993, the court denied summary judgment to the IRS, the corporation and the trusts, granted summary judgment in favor of the attorneys (awarding them $16,970), and then referred the case to the magistrate judge for all purposes including trial and entry of judgment.

After a bench trial, the magistrate judge issued an opinion, holding that the IRS was entitled to the entire proceeds of the sale of the Parker Hill, Green Pastures and Highland Avenue Nursing Homes because Fay had reserved to herself such significant powers in the trusts that their assets would be considered her own under Massachusetts law. 884 F.Supp. at 607, 609. The magistrate judge also held that the government had failed to prove that the trusts or the corporation were Fay's alter egos, and found that the IRS had not established that Fay used the trusts for a fraudulent purpose or for her own individual benefit. *Id.* at 604. Judgment was entered for the IRS in the amount of $27,732.85 plus 55% of the accumulated interest, and for the corporation in the amount of $23,107.04 plus 45% of the accumulated interest.[2] Fay, in her capacity as trustee of the three trusts, then filed this appeal.

Before we proceed to the legal issues, we clarify the present status of the trusts and the proceeds of the sale of the nursing homes. Since 1978, the trusts have not held any property other than the mortgages on the nursing homes, and have not engaged in any transaction or business other than pursuing their claims against Almeida's bankrupt estate and defending the bankruptcy court's award. Although dormant, the trusts continue to exist. They were in no way terminated by the bankruptcy trustee's sale of the nursing homes. Rather, the bankruptcy court awarded the sale proceeds to the trusts in satisfaction of the mortgages. We refer to the sale proceeds as trust property, although not yet paid to the trusts, because the proceeds will become trust property unless paid to the IRS.

## II. *STATUTORY AND CONSTITUTIONAL ISSUES*

Fay first contends that the IRS does not have a valid lien against the trust property because it did not comply with statutory notice and statute of limitations requirements as to the trusts. It gave no notice of assessment as to the trust property in 1979, did not join the trusts, Fay as trustee, or the trust beneficiaries as defendants in its 1984 suit against Fay individually, and did not proceed against them by separate suit, assessment, demand, lien or levy. Second, Fay contends that because the IRS sought in the interpleader action to collect from the trust property as such, the beneficiaries were indispensable parties who were required to be joined in their own right. Finally, Fay argues that because the beneficiaries were given no opportunity to appear and defend their rights in the interpleader action, the magistrate judge's ruling deprived them of property without due process of law.

The IRS responds first that it is only Fay's own property from which it seeks to collect and all notice and limitations requirements were met with respect to her. The IRS concedes that if it had sought to hold the

---

2. After the attorneys were paid at the summary judgment stage, $50,839.89 plus accumulated interest remained. The parties stipulated at trial that the fund was attributable as follows: $23,-

107.04 to the corporation; $16,046.63 to Highland Avenue Nursing Home Trust; $11,246.12 to Parker Hill Nursing Home Trust; and $440.10 to Green Pastures Nursing Home Trust.

trustee, the trusts or the beneficiaries personally liable as Fay's transferees, it would have had to institute a collection action directly against them within six years from the assessment of the tax. *See United States v. Updike*, 281 U.S. 489, 493, 50 S.Ct. 367, 368, 74 L.Ed. 984 (1930); 26 U.S.C. § 6901. The IRS, however, asserts that it sought to collect the taxes out of property that would be considered Fay's own under Massachusetts law. Notice and limitations requirements with respect to the trusts therefore were not implicated. As to Fay's joinder and due process arguments, the IRS responds that the bankruptcy trustee named Fay as trustee in the interpleader action, she has represented the interests of the beneficiaries throughout this litigation, and at no time have the beneficiaries as such sought to intervene. Furthermore, the IRS argues, the beneficiaries' exclusive remedy is a suit for wrongful levy brought pursuant to 26 U.S.C. § 7426(a), which is now time-barred because no such suit was brought within nine months from the date of levy, as required by 26 U.S.C. § 6532(c).

■ Although the magistrate judge did not precisely resolve these issues,[3] we will review them *de novo* as matters of federal law. *Horton Dairy, Inc. v. United States*, 986 F.2d 286, 290 (8th Cir.1993). First, we must untangle the web of statutory and procedural requirements implicated in this phase of Fay's appeal. Once the IRS makes an assessment of a taxpayer's liability, it has sixty days in which to "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303(a). Once notice and demand are given and the tax goes unpaid, a lien in favor of the United States automatically arises "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Whether and to what extent a particular

piece of property constitutes property of the taxpayer to which a federal tax lien can attach is a question of state law. *Aquilino v. United States*, 363 U.S. 509, 512, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). The lien arises at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable by lapse of time. 26 U.S.C. § 6322. The IRS may collect the tax by levy or by bringing a proceeding in court, which according to the pre–1990 version of 26 U.S.C. § 6502 applicable in this case, must be done "within six years after the assessment of the tax."[4] 26 U.S.C. § 6502(a) (1988). A lien becomes unenforceable by lapse of time upon expiration of the six-year statute of limitations for collection, but if the government brings suit within six years from assessment and receives a judgment in its favor, the life of the lien is extended indefinitely. *See Rodriguez v. Escambron Dev. Corp.*, 740 F.2d 92, 94 n. 3 (1st Cir.1984).

There is no dispute that the IRS assessed a tax against Fay individually in 1979, that it gave notice and demand to her within sixty days, that a lien dating from the assessment arose against all of Fay's property and rights to property, that the IRS timely filed a civil action against Fay individually in 1984, that it refiled the notice of tax lien in 1986, and that it obtained a judgment in December of 1990 that extended the life of the lien on Fay's property indefinitely.

■ That brings us to the IRS's collection efforts beginning with the derivative claim in the bankruptcy court in October of 1990 and leading to the interpleader action below. As stated above, the IRS may collect by levy or by a proceeding in court. 26 U.S.C. § 6502(a). The briefs are unhelpful (at best) as to which route the IRS took. The IRS indicates that it levied on the trust property, but the IRS may collect by levy

**3.** The magistrate judge stated at the beginning of his analysis that the separate structures of the trusts could be disregarded for notice and statute of limitations purposes if they were Fay's alter egos, but went on to hold that they were not Fay's alter egos, and never addressed whether the trusts were required to be treated separately under the distinct theory that prevailed—that the trust property would be considered Fay's own

under Massachusetts law. The magistrate judge did not mention Fay's joinder or due process arguments.

**4.** The statute was amended in 1990 to extend the limitations period to ten years. 26 U.S.C. § 6502(a) (1994).

only after notifying the taxpayer in writing of its intention to make such levy. 26 U.S.C. § 6331(a), (b), (d)(1). The notice of levy upon the corporation as Fay's alter ego did not constitute notice of levy on the trust property because, *inter alia,* the trusts and the corporation each held different property. Because it has never notified Fay of an intention to levy on the trust property, there has been no levy.

■■■ Other than by levy, the IRS can collect by a proceeding in court, either by bringing an action pursuant to 26 U.S.C. § 7403, or by simply suing for the amount owed and then exercising "the usual rights of a judgment creditor" to enforce any judgment obtained. *United States v. Rodgers,* 461 U.S. 677, 682, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). This is not a section 7403 action and neither party contends that it is.[5] The IRS is therefore exercising the usual rights of a judgment creditor. It asserts (inconsistently with its indication that it levied on the trust property) that the Federal Debt Collection Procedure Act of 1990 (FDCPA), 28 U.S.C. § 3001, *et seq.,* governs the interpleader proceedings, and Fay does not contend otherwise. Fay's tax indebtedness is a "debt" as defined in the FDCPA because it is "an amount owing to the United States on account of [an] ... assessment." 28 U.S.C. § 3002(3)(B). Except to the extent that another federal law specifies procedures for recovering on a judgment for a debt arising under such law, the FDCPA is the exclusive civil procedure for the government to recover a judgment on a debt. 28 U.S.C. § 3001(a), (b). The tax code (from which the debt arose) does specify procedures for recovering on a judgment by levy, 26 U.S.C. § 6331, and by filing an action in a federal district court to enforce a lien, 26 U.S.C. § 7403, but does not contain specific procedures for otherwise recovering on a judgment, for example by filing a derivative claim in bankruptcy court and litigating against the taxpayer in a resulting interpleader action, as the IRS did here. Thus, the procedures of the FDCPA appropriately control.

■■■ If the magistrate judge was correct that the entire property of each trust would be considered Fay's own under Massachusetts law, then the IRS had a valid lien on that property that it could seek to enforce in the interpleader action. By notifying Fay in 1979, the IRS complied with the plain language of section 6303(a) requiring notice and demand on the only "person liable." The IRS also complied with the statute of limitations by suing Fay in 1984 within six years of the tax assessment in 1979 as required by section 6502(a). The judgment obtained in 1990 extended the life of the lien, so that the IRS's effort to enforce the judgment in the interpleader action was timely. Fay argues that the IRS failed to establish a nexus between the taxes owed by her individually and the proceeds of the sale of the nursing homes, but the IRS does not contend that the tax liability was incurred by the trusts such that the judgment could be satisfied directly from the entire trust property regardless of whether it belonged to Fay. Rather, the IRS has a valid lien upon Fay's individual property and rights to property that it may enforce out of any trust property that under Massachusetts law belongs to Fay, even though the claim arose independently of the trusts.

■■■ As to whether the beneficiaries were indispensable parties who were deprived of an opportunity to be heard in their own right, we begin by rejecting the IRS's argument that the beneficiaries' only remedy is a suit for wrongful levy under 26 U.S.C. § 7426(a). Third parties are limited to that remedy only when the government proceeds by levy, *Rodgers* 461 U.S. at 682–83, 695–96, 103 S.Ct. at 2136–37, 2143–44, which it has not done. Rather, whether the beneficiaries were required to be joined is governed by Fed.R.Civ.P. 19. *See* 28 U.S.C. § 3003(f) (Federal Rules of Civil Procedure apply in FDCPA actions). That rule provides in relevant part that a person subject to service of process and whose joinder will not deprive

---

5. The government has the right in a section 7403 proceeding to seek a forced sale of the entire property in which a delinquent taxpayer has an interest even where innocent others also have an interest in the property. This special privilege arises from the express terms of section 7403, *Rodgers,* 461 U.S. at 697, 103 S.Ct. at 2144, and is not available to the government here.

the court of subject matter jurisdiction "shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest...."[6] Courts applying this rule generally have held that beneficiaries are indispensable parties in actions like this to collect a tax or other debt from the trust corpus, *see Tick v. Cohen,* 787 F.2d 1490, 1495–96 (11th Cir.1986); *United States v. Fried,* 183 F.Supp. 371, 373 (E.D.N.Y.1960), and actions analogous to this seeking to terminate a trust. *See Hansen v. Peoples Bank,* 594 F.2d 1149 (7th Cir.1979). "The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties." *Carey v. Brown,* 92 U.S. 171, 172, 23 L.Ed. 469 (1875); *see also Stevens v. Loomis,* 334 F.2d 775, 777 (1st Cir.1964). An exception to the general rule, however, exists when the trustee represents the beneficiaries' interests fully and without conflict. 3A James W. Moore, Moore's Federal Practice ¶ 19.08 at 175–76 (2d ed. 1985).

The bankruptcy trustee joined Fay both individually and as trustee in the interpleader action. Fay had the duty as trustee under the three declarations of trust to represent the beneficiaries' interests in any lawsuit. While, at least on the surface, the fact that the trustee in this case incurred the debt that the trust property might be reached to pay indicates a potential conflict between Fay and the other beneficiaries, all signs are that Fay represented them zealously and without conflict. Fay has not asserted any claim to the fund in her individual right throughout the course of this litigation, but has appeared only in her capacity as trustee. Moreover, as settlor and one of the beneficiaries of the trust, Fay's interest in protecting the trust property would seem to be at least as strong as that of the other beneficiaries. The bene-

ficiaries as such did not seek to intervene at any point when the district court or the magistrate judge could have joined them as parties in their own right. This is not to say that the issue was waived, *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 559 (5th Cir.1985) (failure to raise below the issue of whether a party should have been joined does not result in waiver), but it does indicate that the beneficiaries did not perceive any failure on Fay's part to represent their interests at the time. And on appeal, Fay fails to describe any conflict between her interests and those of the other beneficiaries, any way in which their interests were not represented, or any way in which the litigation might have gone differently if they had been joined. As will be seen, resolution of the core issue in the case—whether the property of any of the trusts would be considered Fay's own under Massachusetts law—depended factually only on the language of the trust instruments, documents that were before the magistrate judge and are before us. Although in an abundance of caution it may have been better for the beneficiaries to have been joined, as it turned out, Fay faithfully represented their interests. We therefore hold that the beneficiaries were not indispensable parties.

The same considerations defeat Fay's argument that the beneficiaries were deprived of property without due process of law. Moreover, assuming the magistrate judge was right, the beneficiaries were not deprived of their own property.

III. *WAS THE TRUST PROPERTY FAY'S OWN UNDER MASSACHUSETTS LAW?*

When the IRS assessed taxes owed by Fay as a "responsible person" in 1979, a federal tax lien arose "upon all property and rights to property, whether real or personal, belonging to" Fay. 26 U.S.C. §§ 6321, 6322. The tax code "creates no property rights but merely attaches conse-

---

**6.** In contrast, in an action to enforce a lien or subject property to payment of tax brought pursuant to 26 U.S.C. § 7403, "[a]ll persons ... claiming any interest in the property involved" are required to be made parties. 26 U.S.C.

§ 7403(b); *United States v. Big Value Supermarkets, Inc.,* 898 F.2d 493, 496 (6th Cir.1990) (section 7403(b) is mandatory); *United States v. Overman,* 424 F.2d 1142, 1146 (9th Cir.1970) (same).

quences, federally defined, to rights created under state law." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Whether and to what extent Fay's powers, interests and rights in the trusts constitute property to which the federal tax lien could attach is a question of state law. *Aquilino,* 363 U.S. at 512, 80 S.Ct. at 1279–80.

We review *de novo* the issue of whether the trust instruments gave Fay such extensive powers over the trust property that it was in effect her own under Massachusetts law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Losacco v. F.D. Rich Constr. Co.,* 992 F.2d 382, 384 (1st Cir.1993). In doing so, we will take care not to extend state law beyond its well-marked boundaries in an area such as trust law that is quintessentially the province of state courts.

Initially, we clarify that it was not improper for Fay, the settlor of the trusts, to designate herself as both sole trustee and one of the trusts' beneficiaries. Under the common law of trusts, "trustees may be included among the beneficiaries of a trust." *Mahoney v. Board of Trustees,* 973 F.2d 968, 971 (1st Cir.1992), citing Restatement (Second) of Trusts §§ 99, 115 (1959); William F. Fratcher, 2 Scott on Trusts, §§ 99.2, 115 (4th ed.1987). And a sole trustee who is also the settlor may be one of two or more beneficiaries. *Sullivan v. Burkin,* 390 Mass. 864, 460 N.E.2d 572, 575 (1984); *Ascher v. Cohen,* 333 Mass. 397, 131 N.E.2d 198, 199–200 (1956); Restatement (Second) of Trusts § 100.

When a trustee is also a beneficiary, she holds the legal title to the entire trust property in trust for all of the beneficiaries (including herself), has a duty to deal with it for the benefit of the beneficiaries, and does not hold legal title to any of the trust property free of trust to use as she pleases. There is no partial merger of the legal and equitable interests. Restatement (Second) of Trusts § 99 cmt. b; 2 Scott on

Trusts § 99.3. It follows that a creditor generally cannot reach a trustee/beneficiary's interest in a trust, such as these, with a spendthrift provision. Restatement (Second) of Trusts § 99 cmt. b.

When a beneficiary is also the settlor, however, she cannot keep property beyond the reach of her creditors by placing it in a spendthrift trust for her own benefit. *See Merchants Nat'l Bank v. Morrissey,* 329 Mass. 601, 109 N.E.2d 821, 823 (1953); *Forbes v. Snow,* 245 Mass. 85, 140 N.E. 418, 419 (1923). A settlor/beneficiary's creditors therefore can reach "the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit." Restatement (Second) § 156(2), *quoted in Ware v. Gulda,* 331 Mass. 68, 117 N.E.2d 137, 138 (1954). This, of course, does not mean that the interest of any other beneficiary may be reached by the settlor/beneficiary's creditors. 2 Scott on Trusts § 114. As a matter of federal law, a tax lien extends only to property or rights to property belonging to the delinquent taxpayer, and not to property belonging to innocent third parties. *Rodgers,* 461 U.S. at 690, 103 S.Ct. at 2140–41. Whether the tax lien in this case attaches to the entire property of each trust depends on whether the trust instruments give Fay the power to eliminate the other beneficiaries' interests.

### A. The Parker Hill and Green Pastures Nursing Home Trusts

On January 21, 1974, Fay created the Green Pastures and Parker Hill Nursing Home Trusts under declarations of trust whose terms were identical except for the names of the trusts and the identity of their assets. Fay named herself sole trustee and conveyed to herself as trustee the respective nursing homes. Fay named herself and her two sons as the beneficiaries of each trust, all in equal shares, until the trusts terminate.[7] She named her sister Dzialo as the remainder beneficiary of each trust—upon termi-

---

7. The trusts are to terminate at the earliest of the following: twenty years from the date the trusts were declared; Fay's election to terminate; her death; or appointment of a guardian of her or a conservator of her property. Although twenty years have now passed since Fay created the trusts in 1974, we assume the trusts' continuing existence because our point of reference is the date this litigation began.

nation, the trust property and undistributed income were to immediately vest in her free of trust.

The magistrate judge ruled that the IRS was entitled to reach that part of the interpled fund that represents the assets of the Green Pastures and Parker Hill Nursing Home Trusts, based on Fay's "copious" rights and powers as settlor, sole trustee and one of the beneficiaries of the trusts, and her reserved right as settlor to alter, amend or revoke the trusts, although Fay has not exercised those powers or otherwise used the trusts for her exclusive benefit. 884 F.Supp. at 607.

Traditionally, Massachusetts has given full effect to inter vivos trusts, regarding their assets as trust property rather than that of the settlor in spite of broad powers reserved to him or her, at least while those powers remain unexercised. *See National Shawmut Bank v. Joy,* 315 Mass. 457, 53 N.E.2d 113, 122–25 (1944); *Guthrie v. Canty,* 315 Mass. 726, 53 N.E.2d 1009, 1010 (1944). But another line of cases has more recently emerged from the Massachusetts Court of Appeals. In *State Street Bank and Trust Co. v. Reiser,* 7 Mass.App.Ct. 633, 389 N.E.2d 768 (1979), the court broke with tradition, holding that a settlor/beneficiary's creditors could reach trust assets upon his death where he had reserved powers to amend or revoke and to direct the disposition of principal and income during his lifetime, even though the powers remained unexercised at the time of his death, and even though the remainder beneficiaries' rights in the trust vested upon his death because there was no further possibility that he could exercise his powers. *Id.* 389 N.E.2d at 770–71. The court emphasized that the settlor's powers gave him the right until his death to destroy all other beneficial interests in the trust. *Id.* at 771.

Similarly, in *ITT Commercial Finance Corp. v. Stockdale,* 25 Mass.App.Ct. 986, 521 N.E.2d 417 (1988), the court relied on *Reiser* to hold (in the alternative) that a settlor's creditor could reach trust assets upon his death where the settlor was sole trustee, his children were the life and remainder beneficiaries, and he had a general power to amend and revoke and a specific power to substitute

beneficiaries until his death. *Id.* 521 N.E.2d at 417–18. As in *Reiser,* his creditors could reach the trust assets even though he had not exercised his powers and the other beneficiaries' interests had vested. *See also Wolfe v. Wolfe,* 21 Mass.App.Ct. 254, 486 N.E.2d 747, 749 (1985) (⅝ of trust property could be reached to satisfy alimony judgment where settlor had power to alter, amend and revoke and absolute right to withdraw ⅝ of principal; remainder beneficiaries' rights were not vested).

The touchstone of the analysis, then, is whether the trust instrument as a whole gives Fay the power to eliminate the interests of all others in the trust. As settlor, Fay reserved to herself the right "to alter, amend and revoke this Trust, in whole or in part, and to terminate the same." These unrestricted and unconditional powers include the right to substitute or strike out other beneficiaries, *Leahy v. Old Colony Trust Co.,* 326 Mass. 49, 93 N.E.2d 238, 239 (1950), to vary the income or principal paid to the beneficiaries while the trust continues, including the power not to pay them at all, *State Street Trust Co. v. Crocker,* 306 Mass. 257, 28 N.E.2d 5 (1940), and to completely revoke the trust. *Stahler v. Sevinor,* 324 Mass. 18, 84 N.E.2d 447, 448–49 (1949). If Fay revoked the trust, or amended it to make herself the sole beneficiary, the legal title and equitable interest would merge and thereby terminate the trust. *See Atkins v. Atkins,* 279 Mass. 1, 180 N.E. 613, 614 (1932); *Langley v. Conlan,* 212 Mass. 135, 98 N.E. 1064, 1066 (1912). As Fay points out, the trust property would not vest free of trust in her if she caused it to terminate, but in her sister Dzialo. Fay, however, could amend the trust to delete that provision.

As trustee, Fay has broad powers to manage and control the trust property. The IRS makes much of these powers, but we attribute them no significance whatsoever. Broad powers are typically conferred on a trustee as an effective way to manage trust property. Trustees who are also beneficiaries, "like trustees generally, have the power to do acts that are 'necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.'" *Ma-*

*honey,* 973 F.2d at 971, citing Restatement (Second) of Trusts § 186. As we have held in the estate tax context, a settlor/trustee's administrative and management powers cannot be equated with ownership. *See Old Colony Trust Co. v. United States,* 423 F.2d 601, 602–03 (1st Cir.1970).

As trustee, Fay is to hold the nursing homes "in trust" for the "general purposes" of the trusts, and to hold and accumulate the principal and net income "for the use and benefit of said beneficiaries." The sentence immediately following that direction provides: "However, anything to the contrary herein notwithstanding, the Trustee shall have full power and discretion to pay over to said beneficiaries so much or all or any part of the trust property, whether principal or net income, as she shall deem proper." We think that this sentence, in the context of the trust instrument as a whole, gives Fay the power to pay income and/or invade principal for her benefit alone.

 We recognize, as we have before, that under Massachusetts law, a trustee is restricted in the exercise of even broad discretionary powers by the terms of the trust viewed as a whole, and by the trustee's fiduciary duty to use his or her best judgment in good faith. *State Street Bank and Trust v. United States,* 634 F.2d 5, 9 (1st Cir.1980) (citations omitted); *see also Fine v. Cohen,* 35 Mass.App.Ct. 610, 623 N.E.2d 1134, 1139 (1993); *Dana v. Gring,* 374 Mass. 109, 371 N.E.2d 755, 760–61 (1977); *Woodberry v. Bunker,* 359 Mass. 239, 268 N.E.2d 841, 843 (1971); *Old Colony Trust Co. v. Silliman,* 352 Mass. 6, 223 N.E.2d 504, 506 (1967). In particular, a trustee may not exercise a broad discretionary power to shift beneficial interests in a trust. *Fine,* 623 N.E.2d at 1139; *Boston Safe Deposit and Trust Co. v. Stone,* 348 Mass. 345, 203 N.E.2d 547, 552 (1965). A Massachusetts court necessarily would evaluate a trustee's conduct, if challenged, in light of the powers and duties set forth in the trust instrument. *Stone,* 203 N.E.2d at 552; *Fine,* 623 N.E.2d at 1139. In *Copp v. Worcester County Nat'l Bank,* 347 Mass. 548, 199 N.E.2d 200 (1964), the court found that the trust instrument's direction that the trustee invade principal for the life

beneficiary was enforceable and not unrestricted because it was to be in a stated amount and only as necessary for her reasonable support and maintenance. *Id.* 199 N.E.2d at 202–03. In cases interpreting trustee powers for federal estate tax purposes, ascertainable standards limiting trustee discretion have been found where the trust instrument directed principal and/or income to be distributed for a specific purpose (such as education and support), or expressed an intent to preserve principal for remainder beneficiaries, or both. *See State Street Bank and Trust v. United States,* 634 F.2d at 9; *Old Colony Trust Co. v. United States,* 317 F.Supp. 618, 622 (D.Mass.1970); *Dana,* 371 N.E.2d at 761; *Woodberry,* 268 N.E.2d at 843; *Worcester County National Bank v. King,* 359 Mass. 231, 268 N.E.2d 838, 840 (1971); *Silliman,* 223 N.E.2d at 507–08.

If Fay exercised her discretion so as to take the trust property for herself, thereby depleting or destroying the others' interests, we doubt that a court could determine that she had violated her fiduciary duty in carrying out the terms of the trusts because the trust instruments as a whole do not limit her discretion or define the other beneficiaries' interests in income and principal. They do not give Fay's sons the right to any particular proportion of the trust income or principal, the right to receive it at any particular time or interval, the right to receive it for their support or any other definite purpose, or the right to receive it free of trust when the trust terminates. Fay's sister's remainder interest could amount to nothing if Fay decided to pay all of the income and principal to herself. Under these circumstances, we think that Fay's sons and sister would have had little or no recourse if she took the trust property for her own benefit. We recognize that Fay has not done so, but what is dispositive for these purposes is whether the trust instrument contained ascertainable limits on her power to pay income or invade principal for her benefit alone that the other beneficiaries could rely on to enforce any rights of their own.

 Moreover, we do not think that the other beneficiaries' interests in the trust are vested. Although that apparently makes

no difference in light of *Reiser* and *Stockdale,* it does mean that their rights are inchoate at the present time. Under Massachusetts law, whether a right in a trust has vested depends on "whether, in substance, the interest is sufficiently established to constitute an interest or right which has accrued to its holder." *New England Merchants Nat'l Bank v. Groswold,* 387 Mass. 822, 444 N.E.2d 359, 363 (1983). That an interest is "subject only to total or partial defeat by biological events" does not make it inchoate. *Id.* Thus, a beneficiary's right to receive part of the trust property that depends only on his or her survival until the death of other persons is a vested property right. *See Id.; Billings v. Fowler,* 361 Mass. 230, 279 N.E.2d 906, 908 (1972); *Whiteside v. Merchants' Nat'l Bank,* 284 Mass. 165, 187 N.E. 706, 709 (1933); *Alexander v. McPeck,* 189 Mass. 34, 75 N.E. 88, 92 (1905). But where the right depends on the exercise or non-exercise of powers held by another, the beneficiary's right does not vest until the person holding the powers can no longer exercise them. *See Reiser,* 389 N.E.2d at 770 (remainder interests of beneficiaries became vested upon death of settlor because his powers to amend or revoke the trust and direct payments from it died with him); *Old Colony Trust Co. v. Clemons,* 332 Mass. 535, 126 N.E.2d 193 (1955) (rights of remainder beneficiaries did not vest until settlor's death where he had the right to revoke the trust or change beneficiaries). Any right in Fay's sons or sister to receive part of the trust property is not contingent on a mere biological event, but on whether or not Fay exercises her power to amend or revoke the trusts, and on to whom and in what amounts she distributes income and principal while the trust continues. Their interests therefore are not vested.

Due to the broad nature of Fay's powers and the limited and unenforceable nature of the beneficial interests, Fay has the power to eliminate the interests of her sons and her sister. We therefore think that a Massachusetts court would treat the entire trust property of the Green Pastures and Parker Hill Nursing Home Trusts as Fay's own in favor of her creditors. Like the settlors in *Reiser, Stockdale* and *Wolfe,* Fay has the right to amend and revoke the trusts and to direct

disposition of principal and income. Although there is nothing invalid in the roles of settlor, trustee and beneficiary co-existing in the same person, in this case it meant that Fay had the power as trustee to distribute income and principal in whatever proportion she deemed proper, the right as a beneficiary to receive income and principal in whatever amount she as trustee deemed proper, and the unrestricted power as settlor to alter, amend, or revoke the trusts. The trusts at issue here are even more vulnerable to Fay's creditors than those at issue in *Reiser* and *Stockdale* because the other beneficiaries' interests in the trust have not vested and Fay remains able to exercise her powers and thus deplete or destroy them.

■ We do not hold that the trusts are invalid—a trust in which the settlor has reserved to herself the power to alter, amend or revoke, and is also the sole trustee and one of the trusts' beneficiaries with a right to receive income and principal in her own discretion as trustee, is not invalid. *See Roberts v. Roberts,* 419 Mass. 685, 646 N.E.2d 1061, 1064 (1995); *Sullivan,* 460 N.E.2d at 575; *Ascher,* 131 N.E.2d at 199–200. And although it may be only a technical distinction, we do not hold that Fay must exercise her power to amend or revoke to satisfy the tax debt. *See In re Cowles,* 143 B.R. 5, 10 (Bankr.D.Mass.1992) ("The Court can allow the creditors to reach the assets of the trust without requiring revocation of the trust."). Rather, we hold that the federal tax lien on Fay's individual property reaches the entire assets of the Green Pastures and Parker Hill Nursing Home Trusts because Fay has the power to eliminate the other beneficiaries' interests and treat the trust property as her own based on the following combination of provisions in the trust instruments: (1) Fay as settlor has the power to alter, amend or revoke, which, if exercised, could result in the entire trust property vesting in her; (2) Fay as trustee has absolute discretion to pay income and principal to the beneficiaries, including herself, in whatever proportion she deems appropriate, even if such payments entirely deplete the other beneficial interests; and (3) Fay is settlor, trustee and a beneficiary. Fay invokes *George v. Kitchens*

*by Rice Bros., Inc.*, where we stated that "a power of revocation under Massachusetts law is not considered property ... and cannot be reached by creditors." 665 F.2d 7, 8 (1st Cir.1981). *George* remains a correct interpretation of Massachusetts law where, as in that case, the only power reserved by the settlor, who was also the trustee but not a beneficiary, was the power to revoke.

■■■ Because the tax lien consequently attaches to the mortgages now held by the trusts, the lien attaches to the proceeds of the sale of the nursing homes that would otherwise replace the mortgages as trust property. *Cf. Phelps v. United States,* 421 U.S. 330, 334, 95 S.Ct. 1728, 1731, 44 L.Ed.2d 201 (1975) (when property subject to tax lien is transferred, the lien attaches to the proceeds of the transfer).

### B. *The Highland Avenue Nursing Home Trust*

■■■ On August 14, 1974, Fay created the Highland Avenue Nursing Home Trust, naming herself as sole trustee for her life, and the beneficiaries as herself, her two sons and her sister Dzialo, "in equal shares." Paragraph 11 of the declaration of trust provides as follows: "The Trustee, may, subject to the limitations herein expressed, acquire, own, and dispose of any interest in this trust [to] the same extent as if she were not a Trustee." The magistrate judge found that paragraph 11 gives Fay the power to treat the principal and income of the trust as her own, and held that the IRS was therefore entitled to the proceeds of the sale of the Highland Avenue Nursing Home. 884 F.Supp. at 609–10. In reaching that conclusion, the magistrate judge first observed that the meaning of the trust instrument as a whole was difficult to discern, raising the suspicion that it was drafted "so as to give the trustee free reign but also so as to contain other language purporting to constrain the trustee merely to have something at which to point if the trust were attacked." *Id.* at 607. Against this backdrop, the magistrate judge found specif-

ic ambiguity in paragraph 11, in that the term "any interest" could mean either Fay's "beneficial interest" or the "income and principal" of the trust. *Id.* at 609. Resolving the ambiguity against Fay as drafter, the magistrate judge concluded that "any interest" must mean the "income and principal" of the trust. This was so because the only other instance in which the word "interest" is used without being modified by the word "beneficial" is in paragraph 23, referring to the "interest of any beneficiary hereunder, either as to income or principal." [8] The magistrate judge then read out of paragraph 11 the phrase "subject to the limitations herein expressed," based on his interpretation of the trust instrument as imposing no limitation on Fay's powers as trustee. *Id.* at 609. Paragraph 11 therefore meant that Fay could treat the principal and income as her own free of trust. *Id.* at 609–10.

We hold that the magistrate judge erred as a matter of law in interpreting paragraph 11 as giving Fay the power to treat the principal and income of the trust as her own. *First,* we fail to see in the trust instrument a purpose to mislead or an unusual or unfair allocation of powers, rights and interests among the settlor, the trustee and the beneficiaries. Fay reserved no powers to herself as settlor, but the magistrate judge seemed to find it significant that on the one hand, Fay as trustee holds legal title to and has extensive powers to manage and dispose of the trust property, while on the other, the beneficiaries do not have any title in the trust property, but "shares of beneficial interests" that cannot be transferred or assigned without offering them first to the other beneficiaries, and that are "personal property, giving only the rights in this instrument specifically set forth." *Id.* at 607–09.

■■■ The trust instrument's definition of the various powers, rights and interests was a correct statement of the Massachusetts law of trusts. The creation of a trust results

---

**8.** Paragraph 23 is the spendthrift provision, providing that "[t]he interest of any beneficiary hereunder, either as to income or to principal, shall not be anticipated, alienated, or in any manner assigned by such beneficiary and shall

not be subject to any legal process, bankruptcy proceedings, or the interference or control of creditors or others, nor the subject matter of any contract or trust made or entered into by any beneficiary."

in the separation of the legal interest in the trust property, which is in the trustee, from the beneficial interest in the trust, which is in the beneficiaries. 2 Scott on Trusts, § 99. The trustee holds the legal title to the trust property in trust for the beneficiaries, while the beneficiaries hold beneficial interests, which are equitable in nature. *See Russell v. Russell*, 18 Mass.App.Ct. 957, 468 N.E.2d 1104, 1106 (1984) (defining a trust as the "manifestation of an intention to create a fiduciary relationship with respect to property, [which] subject[s] the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person") (internal quotation marks and citations omitted); *National Shawmut Bank v. Cumming*, 325 Mass. 457, 91 N.E.2d 337, 338 (1950) (referring to the trustee's "title" to and the beneficiary's "beneficial interests" in the trust property); *Worcester Trust Co. v. Turner*, 210 Mass. 115, 96 N.E. 132, 134 (1911) (trustee holds title to the principal; beneficiary has a right to receive so much of it as necessary in the trustee's discretion, but no absolute right to the fund itself). A trustee does not hold trust property as her own due to the fact that she holds legal title to it. *See Cook v. Howe*, 280 Mass. 325, 182 N.E. 581, 582–83 (1932) (trustee who holds legal title to real estate in trust for a beneficiary may not keep the proceeds as his own); *cf. Cantor v. Wilbraham and Monson Academy*, 609 F.2d 32, 35 (1st Cir.1979) (trustee is the legal owner, but the trust itself is the debtor for purposes

of the Bankruptcy Act). Rather, a trustee holds legal title in order to manage the trust property, and typically has broad powers to do so as a practical way of conducting the trust's business. Like any trustee's powers, Fay's powers to hold, manage and dispose of the trust property were subject to the "specific limitations herein contained," that is, to conduct the trust business "for the benefit of the holders of the shares hereunder."

■ That the beneficiaries' interests were "personal property" was also a correct statement of the law. Where, as here, a trust contains both real and personal property,[9] and the trust instrument directs that the trust assets be liquidated upon termination of the trust, the beneficiaries' interests are personal property from the trust's inception. *See Priestley v. Burrill*, 230 Mass. 452, 120 N.E. 100, 104–05 (1918); *Dana v. Treasurer and Receiver General*, 227 Mass. 562, 116 N.E. 941, 943–44 (1917).

■ The language providing that "ownership of a beneficial interest ... shall not entitle the beneficiary to any title in or to the trust property whatsoever, or right to call for a partition or division of the same, or for an accounting," is not unfamiliar in Massachusetts trusts. *See, e.g., Gardiner v. United States*, 49 F.2d 992, 994 (1st Cir.1931); *Lauricella v. Lauricella*, 409 Mass. 211, 565 N.E.2d 436, 437 (1991); *State Street Trust Co. v. Hall*, 311 Mass. 299, 41 N.E.2d 30, 32, 35 (1942); *Dana*, 116 N.E. at 942.[10] As set

---

9. Fay as trustee was to "hold [the Highland Avenue Nursing Home] and cash so to be acquired by her, as well as all other property which she may acquire as such Trustee together with the proceeds thereof," and was "authorized to manage and maintain the trust property and invest and reinvest the property and proceeds of the trust in real estate, mortgages, securities of any lawful business and to engage in any lawful business."

10. Trusts that contain similar provisions and that have a similar purpose in that at least part of the purpose of the trust is to carry on a business, are common in Massachusetts. Whether such a trust is, for various purposes, a pure trust, a business trust or a partnership has often been litigated, and depends on the relative powers of the trustees and beneficiaries, whether the primary activity of the trust is commercial, and whether it issues transferrable certificates of

shares. *See Hecht v. Malley*, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924); *Pope and Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir.1941); *Bomeisler v. M. Jacobson & Sons Trust*, 118 F.2d 261 (1st Cir.1941); *Gardiner*, 49 F.2d 992; *In re Village Green Realty Trust*, 113 B.R. 105 (Bankr.D.Mass.1990); *In re Medallion Realty Trust*, 120 B.R. 245 (Bankr.D.Mass.1990); *In re L & V Realty Trust*, 61 B.R. 423 (Bankr. D.Mass.1986); *First Eastern Bank v. Jones*, 413 Mass. 654, 602 N.E.2d 211 (1992); *Hall*, 41 N.E.2d 30; *Baker v. Comm'r of Corps. and Taxation*, 253 Mass. 130, 148 N.E. 593 (1925); *Dana*, 116 N.E. 941; *Frost v. Thompson*, 219 Mass. 360, 106 N.E. 1009 (1914); *Williams v. Inhabitants of Milton*, 215 Mass. 1, 102 N.E. 355 (1913). *See also* Takemi Ueno, *Defining a "Business Trust": Proposed Amendment of Section 101(9) of the Bankruptcy Code*, 30 Harv.J. on Legis. 499 (1993). That question is not before us, but trusts with characteristics like those of the Highland

forth above, it is a correct statement of the law of trusts that beneficiaries do not hold title to the trust property; rather, they own an equitable interest in the trust property. Although we are somewhat concerned about the language purporting to deny the beneficiaries a right to call for an accounting, that language would have been disregarded if the beneficiaries had petitioned a court for an accounting. *Briggs v. Crowley*, 352 Mass. 194, 224 N.E.2d 417, 421 (1967). And spendthrift provisions like the one here are valid in Massachusetts. *Pemberton v. Pemberton*, 9 Mass.App.Ct. 9, 411 N.E.2d 1305, 1312 (1980).

*Second*, we think that the interpretation of the term "any interest" in paragraph 11 as "income and principal" is extraordinarily strained, but more to the point, it does not follow even from that interpretation that the beneficiaries other than Fay do not have enforceable equitable interests in the trust or that Fay has the power to eliminate those interests in her own favor. Although we agree that paragraph 11 is ambiguous viewed in isolation, it is not susceptible of the meaning the magistrate judge attributed to it when viewed in the context of the trust instrument as a whole. The magistrate judge did not take account of the distribution of powers in the trust that should have led to the conclusion that Fay did not have the power to eliminate the other beneficiaries' interests.

Fay did not reserve to herself the right to unilaterally alter, amend or revoke the trust, but granted it to those holding a majority of beneficial shares. The trust is to terminate twenty years after Fay's death, or may be terminated earlier "by a majority vote of all shares outstanding, at a meeting of the trustee and the beneficiaries, called for that expressly stated purpose," at which the trustee may not vote. Whenever the trust terminates, the then trustee(s) must wind up the affairs of the trust, liquidate the assets and distribute the proceeds among the beneficiaries in proportion to the shares owned by them. The trust "may be amended or al-

tered in any part whatever ... with the consent of a majority percentage of vote as hereinbefore provided."

■ A settlor may either reserve powers to herself or grant them to others, *Crocker*, 28 N.E.2d at 7, but a trust "cannot be revoked or altered except by a reserved power to do so, which must be exercised in strict conformity with its terms." *Trager v. Schwartz*, 345 Mass. 653, 189 N.E.2d 509, 511–12 (1963) (citations omitted). *See also Markell v. Sidney B. Pfeifer Found., Inc.*, 9 Mass.App.Ct. 412, 402 N.E.2d 76, 92 (1980); *Stahler v. Sevinor*, 324 Mass. 18, 84 N.E.2d 447, 448 (1949); *Thorp v. Lund*, 227 Mass. 474, 116 N.E. 946 (1917). The Highland Avenue Nursing Home Trust therefore could only be altered or revoked by the beneficiaries holding a majority of shares. Just as Fay could eliminate other beneficiaries of the Green Pastures or Parker Hill Nursing Home Trusts as part of her power to alter or amend, those holding a majority of beneficial shares in the Highland Avenue Nursing Home Trust could eliminate Fay as a beneficiary by exercising their power to amend "in any part whatever." Furthermore, the other beneficiaries could have ousted Fay as trustee. Although beneficiaries cannot appoint a new trustee without an express grant of power to do so, where, as here, they have a power to revoke and to compel the trustee to transfer the trust property to them, they can revoke the trust and immediately create a new trust, naming a new trustee. 2 Scott on Trusts § 108.4; Restatement (Second) of Trusts § 108 cmt. i.

Moreover, Fay does not have unbridled discretion as trustee to take income or invade principal at the expense of the other beneficiaries, who have enforceable interests in the trust. While Fay may distribute net earnings in such amount as she sees fit, she must make some distribution at least annually "in the proportion to the shares owned by the beneficiaries." Furthermore, the trust instrument evidences Fay's intent that,

---

Avenue Nursing Home Trust are a "lawful method of transacting business in [the] Common-

wealth." *Hall* 41 N.E.2d at 34.

upon termination, the trust property go to beneficiaries in addition to herself or her successors. At that time, the assets must be liquidated and the proceeds distributed proportionately among the beneficiaries.

Although Fay is the settlor, trustee and a beneficiary, the trust instrument gives her no power to unilaterally alter, amend or revoke the trust, limits her discretion as trustee to distribute income, and limits her right to receive income as a beneficiary to an amount in proportion to the shares owned by her. Fay's rights and powers therefore were not so centralized as to make the entire trust property her own.

In light of the trust instrument as a whole, we conclude that paragraph 11 does not mean that Fay has the power to treat the principal and income of the trust as her own free of trust. The term "any interest" could mean Fay's beneficial interest, so that paragraph 11 means that Fay, like any other beneficiary and although she is the trustee, may acquire, own and dispose of shares in accordance with the conditions and procedures set forth in the declaration of trust;[11] receive annual distributions out of net earnings in proportion to her share; and have her equitable interest in the trust pass to her successors upon her death.[12] *See Andreson v. Andreson,* 29 Mass.App.Ct. 476, 562 N.E.2d 91, 92 n. 2 (1990) (trust instrument stated that "[a]ny trustee may without impropriety become a beneficiary hereunder and exercise all rights of a beneficiary with the same effect as though he were not a trustee."). Alternatively, the term "any in-terest" could mean the trust principal and undistributed income, so that paragraph 11 means that Fay as trustee had full power to manage the business of the trust free of the control of the other beneficiaries (who could remove her as a beneficiary or as trustee). *Cf. Navarro Sav. Assoc. v. Lee,* 446 U.S. 458, 459, 465 n. 14, 100 S.Ct. 1779, 1784 n. 14, 64 L.Ed.2d 425 (1980) (trustees had exclusive authority over trust property free from control of shareholders "as if the Trustees were the sole owners of the Trust Estate in their own right," while shareholders had power to terminate or amend). Under any interpretation, Fay was "subject to the limitations herein expressed," that is, her duty as trustee to hold the trust property "in trust, to manage and dispose of the same for the benefit of the holders of the shares."

In sum, we hold that the entire property of the Highland Avenue Trust does not constitute Fay's "property" or "rights to property" to which the federal tax lien could attach because the trust instrument defines the various powers, rights and interests in accordance with the law of trusts, gives the beneficiaries other than Fay enforceable equitable interests in the trust property, and does not give Fay the unilateral power to eliminate their rights.

The lien does, however, attach to whatever aspect of Fay's beneficial interest in the Highland Avenue Nursing Home Trust that constitutes present "property or rights to property" under Massachusetts law.[13] While a federal tax lien attaches to property and rights to property that the taxpayer

---

11. Paragraph 13 provides that "the beneficial interests hereby created shall not be transferrable or assignable without first offering said shares to the other beneficiaries in writing." The trustee must notify the remaining beneficiaries of a beneficiary's offer to sell shares; they or any of them may accept the offer, or, alternatively, three arbitrators may be chosen to ascertain the value of the offered shares; the beneficiary desiring to sell may do so free of restriction thirty days from the date of the arbitrators' determination if the beneficiary desiring to buy has not paid the amount so determined; and if more than one beneficiary desires to buy, they may buy the offered shares in proportion to the shares held by them.

12. The executors, administrators or assigns of any deceased beneficiary are to succeed to his or her rights under the trust.

13. The spendthrift clause is ineffective as to Fay's beneficial interest because she is both settlor and beneficiary. *See Morrissey,* 109 N.E.2d at 823; *Forbes,* 140 N.E. at 419. Moreover, a spendthrift clause is "merely a state-created exemption from the reach of creditors, and not an aspect of the substantive [property] right" to which a federal lien attaches. *United States v. Rye,* 550 F.2d 682, 685 (1st Cir.1977).

acquires at any time after assessment, it does not attach unless and until the taxpayer acquires what is defined as property by state law. *United States v. McDermott,* 507 U.S. 447, 452–54, 113 S.Ct. 1526, 1530, 123 L.Ed.2d 128 (1993). Thus, courts have held that while a federal tax lien attaches to a taxpayer/beneficiary's present right to receive distributions of income or principal, it does not attach to the trust corpus when he or she has no present right to receive it. *United States v. Cohn,* 855 F.Supp. 572, 576–77 (D.Conn.1994); *In re Cavanaugh,* 153 B.R. 224, 228 (Bankr.N.D.Ill.1993); *Wilson v. United States,* 140 B.R. 400, 404, 407 (Bankr. N.D.Tex.1992). *See also In re Lyons,* 148 B.R. 88 (Bankr.D.D.C.1992) ("a federal tax lien may attach to a taxpayer's vested right, under a trust … to receive periodic payments or distributions of property then due or that will become due in the future.").

■ Fay's right to receive annual distributions from net earnings in proportion to her share until her death or until the trust terminates earlier is a presently vested property right. *See Forbes,* 140 N.E. at 420. Because "a settlor cannot place property in trust for his own benefit and keep it beyond the reach of his creditors," Fay's "creditors can reach the maximum amount which the trustee under the terms of the trust could pay to [her] or apply for [her] benefit." *Ware v. Gulda,* 331 Mass. 68, 117 N.E.2d 137, 138 (1954), citing Restatement (Second) of Trusts § 156(2) (internal quotation marks and additional citations omitted).

■ Fay's right to sell her share is not a present right to property because she cannot sell it to anyone other than her co-beneficiaries without at least their passive consent. *See* note 11, *supra.* In *United States v. Bess,* the Supreme Court held that a lien attached to an insured's right under the terms of his life insurance policy to exchange the policy for its cash surrender value during his lifetime. 357 U.S. at 56, 78 S.Ct. at 1057–58. Fay's right to sell her beneficial share is similar to Bess's right to exchange his policy for cash, except that Fay's right to sell is qualified and limited by the rights of the other beneficiaries to buy her share, while Bess's right to cash in his policy was unqualified. This distinction is critical because Fay has property to which a tax lien can attach only insofar as conferred by the trust instrument as it would be enforced by state law. *Cf. Chicago Mercantile Exch. v. United States,* 840 F.2d 1352, 1354–56 (7th Cir.1988) (where taxpayer could transfer his exchange seat only as authorized and on the conditions prescribed in the exchange rules, with no rights in or to the membership or the proceeds of the sale of such membership except as specifically granted in the rules, the full extent of member's property interest in the seat, which had already been involuntarily sold, was the remainder of the proceeds after internal claims were paid.). Although we have not found any Massachusetts case discussing whether a qualified right to sell a beneficial interest in a trust is property, we have no doubt that a Massachusetts court would enforce the other beneficiaries' right to buy Fay's share if she attempted to sell it to an outsider without consulting them or without their consent. Fay's limited right to sell her share therefore is not a present right to property. The lien, of course, will attach to the proceeds from the sale of Fay's share if and when she sells it (assuming the tax debt is not paid), because she will then be holding her own property free of trust.

■ Nor does Fay have present property rights in the trust corpus. As a beneficiary, she has no title to the trust property or right to call for a partition or division of it as long as the trust continues, and has "only the rights in this instrument specifically set forth." She has no right to receive or withdraw any of the trust principal. *Cf. In re Cowles,* 143 B.R. 5, 10 (Bankr.D.Mass.1992) (settlor had the power to withdraw "any part or all of the trust property," so his creditors could reach the entire trust principal); *Wolfe,* 486 N.E.2d at 749 (settlor had the right to withdraw ⅝ of the trust corpus, so his creditor was permitted to reach that part of the trust principal). According to the declaration of trust, Fay could receive her share of

the liquidated assets during life only if those owning a majority of beneficial shares vote to terminate the trust during her lifetime; otherwise, her executors, administrators or assigns will succeed to her rights upon her death.

As set forth in Part III(A), under Massachusetts law, whether a right in a trust has vested depends on "whether, in substance, the interest is sufficiently established to constitute an interest or right which has accrued to its holder," that is, whether it is subject to defeat only by biological events, in which case the right is vested, *Groswold,* 444 N.E.2d at 363, or whether it is subject to defeat by another person's decision to exercise a power that he or she holds, in which case the right does not vest until the person holding the power can no longer exercise it. *Reiser,* 389 N.E.2d at 770; *Clemons,* 126 N.E.2d 193. The possibility that Fay might receive a share of the trust corpus during her lifetime hinges on whether or not a majority of the holders of beneficial shares vote to terminate the trust, and whether or not they decide to amend the trust by removing her as a beneficiary. Thus, it does not amount to a present right to property under Massachusetts law. The lien will attach to her share of the assets if and when the trust terminates during her lifetime (again assuming the tax debt is still unpaid), because she will then be holding her own property free of trust.

■ Assuming that a majority of the beneficiaries do not vote to terminate the trust during Fay's lifetime, her executors, administrators or assigns will succeed to her rights under the trust upon her death. In *Bess,* the Supreme Court stated with regard to the proceeds of a life insurance policy that "[i]t would be anomalous to view as 'property' subject to lien proceeds never within the insured's reach to enjoy, and which are reducible to possession by another only upon the insured's death when his right to change the beneficiary comes to an end." *Id.* at 55–56, 78 S.Ct. at 1057. But in Massachusetts, the right of a trust beneficiary to have his share of the trust corpus paid over to his successors upon death has been treated as a present right to property during the beneficiary's lifetime. *See, e.g., Forbes,* 140 N.E. at 420; *Alexander,* 75 N.E. at 92. In those cases, however, the trust instrument unequivocally provided that the beneficiary's share of the corpus was to be paid over, free of trust, to the beneficiary's successors upon death. Whether there will be any interest in the trust to which Fay's heirs or assigns could succeed depends, again, on whether those holding a majority of beneficial shares vote to terminate the trust before Fay's death, or to eliminate Fay as a beneficiary. We think that Fay's right to have her successors receive income or principal from the trust therefore is too ethereal to constitute a present right to property. The lien will attach, however, upon Fay's death to whatever beneficial interest she holds at that time, again assuming the tax debt remains unpaid. *Cf. Welch v. Paine,* 120 F.2d 141, 143 n. 2 (1st Cir.1941) (creditors of a decedent must be paid before his property passes to the next of kin).

We remand to the magistrate judge to fashion an order enforcing the tax lien on Fay's present right to receive annual distributions from net earnings in proportion to her share. That the value of this right may be difficult to discern does not alter the conclusion that the lien presently attaches, *Rye,* 550 F.2d at 685; *Raihl v. United States,* 152 B.R. 615, 619 (Bankr.9th Cir.1993), but it does not flow from that conclusion that the property can be executed upon immediately. *United States v. Overman,* 424 F.2d 1142, 1145 (9th Cir.1970). Under the FDCPA, property held in trust is "co-owned property," *cf. United States v. Coluccio,* 51 F.3d 337, 342 (2d Cir.1995) (funds in constructive trust are co-owned property), which the government can execute on only "to the extent such property is subject to execution under the law of the State in which it is located." [14] 28 U.S.C. § 3203(a); 28 U.S.C. § 3010(a).

---

**14.** When the IRS seeks to collect other than through a section 7403 proceeding or by levy, it has the privileges of an ordinary judgment creditor, *Rodgers,* 461 U.S. at 682, 697, 103 S.Ct. at 2136–37, 2144–45, or in this case, whatever privileges the FDCPA confers.

In Massachusetts, a trust cannot be terminated in order to pay a creditor at any time earlier than the terms of the trust provide, at least where there are beneficiaries other than the debtor. *See Forbes,* 140 N.E. at 421; *Alexander,* 75 N.E. at 91. Fay's beneficial right to receive an annual share of net earnings can, however, be executed upon in one of two ways. First, even though it ordinarily could not be reached and applied "until a future time or is of uncertain value," it can be reached and applied "if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court." Mass.Gen.L. ch. 214 § 3(6). *See also New England Merchants Nat'l Bank v. Hoss,* 356 Mass. 331, 249 N.E.2d 635, 638 (1969); *Whiteside,* 187 N.E. at 710; *Alexander,* 75 N.E. at 92. Thus, Fay's right to receive annual distributions from net earnings conceivably could be sold and the proceeds paid to the IRS if its value could be ascertained and a buyer found. Alternatively, her share of net earnings could be paid to the IRS as it comes due annually according to the terms of the trust. *Forbes,* 140 N.E. at 421; *see also United States v. Solheim,* 953 F.2d 379, 382 (8th Cir.1992); *Cohn,* 855 F.Supp. 572, 576–77; *United States v. Taylor,* 254 F.Supp. 752, 758 (N.D.Cal.1966), *cited with approval in Rye,* 550 F.2d at 685. The magistrate judge may proceed according to either method, holding hearings or other proceedings as necessary.

## IV. *CONCLUSION*

On remand, the judgment should be modified as follows: The United States is entitled to $11,686.22 (the proceeds of the sale of the Green Pastures and Parker Hill Nursing Homes) plus the accumulated interest on those proceeds. The Highland Avenue Nursing Home Trust is entitled to $16,046.63 (the proceeds of the sale of the Highland Avenue Nursing Home), plus the accumulated interest, less any amount determined to be presently payable to the IRS. The magistrate judge shall fashion an order enforcing the tax lien on Fay's right to annual payments from net earnings of the Highland Avenue Nursing Home Trust.

*Affirmed in part, reversed in part, and remanded for a new judgment. No costs.*