### UNITED STATES

v.

**Michael MURRAY, Judith Murray, Eastern Savings Bank, Household Finance Corporation II, Lep Profit International, Inc.**

**Civil Action No. 97–10602–RGS.**

United States District Court,
D. Massachusetts.

March 5, 1999.

Order Vacating Opinion in Part
on Reconsideration in Part,
May 7, 1999.

Carina J. Campobasso, Trial Atty., Tax Div., U.S. Dept. of Labor, Washington, DC, for Plaintiff.

John C. Ottenberg, Berry, Ottenberg & Dunkless, Boston, MA, for Judith E. Murray.

Robert L. Marder, Lynn, MA, for Eastern Savings Bank.

Peter J. Brockmann, Shectman, Litsey, Levy & Halpern, Providence, RI, for Household Finance Corp.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

STEARNS, District Judge.

The Internal Revenue Service (IRS) is seeking to confirm the validity of a tax lien it holds on Michael Murray's beneficial interest in a home ("Juliette Road") in Saugus, Massachusetts. Judith Murray, Michael Murray's former wife, contends that the entire beneficial interest in the home is hers, and that the lien, while valid, attaches to nothing.

### BACKGROUND

The facts construed in the light most favorable to the Murrays are as follows.[1] Judith and Michael Murray were married in 1967. J. Murray Aff. ¶ 5. In 1976, the Murrays purchased a home at 9 Juliette Road in Saugus, taking title as tenants by the entirety. Id., at ¶ 9. In 1980, the Murrays were advised to put the home in trust. An attorney, Richard Reynolds, prepared a trust instrument deeding the property to the trustees of the M & J Murray Realty Trust. Plaintiff's Ex. 4; J. Murray Aff. ¶ 9. The Trust was recorded at the Southern Essex County Registry of Deeds on February 4, 1981. Plaintiffs' Exs. 3 and 4.

The trust instrument named Judith Murray, Michael Murray, and Frederick Chalifoux as trustees. Chalifoux is Judith Murray's step-brother and is "an experienced and trusted business and financial advisor." J. Murray Aff. ¶ 11. Chalifoux participates actively in the management of the Trust. Id. Under the terms of the

---

1. Several salient counter-facts favorable to the IRS are noted where appropriate, although the material facts are largely undisputed.

trust, the trustees have "absolute control, management, and disposition of the Trust Property as if they were the absolute owners thereof, free from the control of the beneficiaries," including the powers to sell, lease or mortgage the property, and to invest the trust's assets without restriction. Plaintiff's Ex. 4, Art. IV. Any action requires the vote of at least two trustees. Id., Art. III, ¶ 2. The Trust has a twenty year term, but it can be terminated at any time by a majority of the trustees. Id., Art. VII. Michael and Judith are the beneficiaries of the Trust, each having an equal share of its income and assets. Id., Art. II, ¶¶ 1 and 2. The Trust provides that at its termination, the Trust Assets will be distributed evenly between Michael Murray and Judith Murray "if they shall be living;" but if either Michael or Judith predecease the other, the survivor takes the decedent's share. Id., Art. II ¶ 3. The trust instrument also contains a spendthrift clause stating that the interest of the beneficiaries may not be assigned, attached or alienated in any way. Id., Art. II, ¶ 4.

The Murrays were solvent when the Trust was created and had no reason to anticipate any unmanageable debt. The Trust was intended to provide the Murrays with an ownership vehicle for purchases of additional real estate. J. Murray Aff. ¶ 9.[2] Also of concern was a swimming pool that the Murrays had recently installed. The Murrays were advised by their attorney that the Trust would put Juliette Road beyond the reach of any injured judgment creditor. Id.

In March of 1987, Michael Murray's air freight trucking business, All Air Transportation Corp. (AATC), needed capital.

The Trust agreed to give a second mortgage on Juliette Road to Household Finance Corporation as security for a loan to AATC of $26,714.05.[3] Id., ¶ 13. The Murrays considered the loan as a distribution from Michael's share in the Trust. Id., ¶¶ 14 and 16; M. Murray Aff. ¶¶ 3 and 6.[4]

Michael has not contributed towards the payment of the Trust's expenses since 1985. Nor has he made the payments on the Household Finance loan.[5] J. Murray Aff. ¶ 14. Judith Murray has since 1985 made all payments on the first and second mortgages. She has also paid the real estate taxes and the costs of maintaining Juliette Road. Id.

Judith and Michael Murray separated in May of 1987. Judith filed for divorce in March of 1988, and obtained an attachment on Michael's interest in Juliette Road. The parties executed a Separation Agreement in September of 1988. The divorce became final in March of 1989. J. Murray Aff. ¶¶ 5 and 16.

On November 21, 1998, the IRS assessed Michael Murray the sum of $105,243.06 for his failure to pay AATC's withholding and employment taxes during calendar 1987 and for the first quarter of 1988. Plaintiff's Exs. 1 and 2. A notice of the assessment and a demand for payment was served on Michael Murray.[6] On March 14, 1989, the IRS recorded a Notice of Federal Tax Lien at the Southern Essex County Registry of Deeds. Plaintiff's Ex. 2.

When Judith and Michael Murray executed their Separation Agreement in September of 1988, "Judith and Michael believed there was no remaining value to Michael's beneficial interest in the Trust."

---

2. There is no evidence that the Murrays ever purchased any additional real estate.

3. At the time of the Household Finance loan, Juliette Road was appraised at $135,000. J. Murray Aff. ¶ 13.

4. No Trust document reflects this understanding.

5. The total payment required over the life of the second mortgage is $61,885.15. The loan presently has an outstanding principal balance of approximately $4,000.

6. Judith states that she first learned of the tax lien when this case was filed in 1997. J. Murray Aff. ¶ 8.

J. Murray Aff. ¶ 16. The Separation Agreement, however, required Michael Murray to convey his "right, title and interest" in Juliette Road to Judith Murray within thirty days.[7] Separation Agreement, at 4; J. Murray Aff. ¶ 16; M. Murray Aff. ¶ 6. Both Judith Murray and Michael Murray state in affidavits that they intended any remaining beneficial interest in the Trust held by Michael to devolve on Judith upon execution of the Separation Agreement. J. Murray Aff. ¶ 16; Michael Murray Aff. ¶ 6. The trustees, however, did not formally transfer Juliette Road to Judith Murray until March 29, 1989. Plaintiff's Ex. 6. The deed transferring the property was recorded on April 5, 1989. Id.

In 1994, Michael Murray was unemployed, suffering from depression and homeless. Judith allowed Michael to resume living at Juliette Road.[8] Michael makes no present contribution towards the maintenance of the property. Id., at ¶ 19.

### DISCUSSION

Summary judgment is appropriate if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The standard of review of cross-motions for summary judgment

> is identical to that for an individual motion, the Court must handle each of the cross motions as if they were two distinct, independent motions. *Arnold Pontiac–GMC v. General Motors,* 700 F.Supp. 838, 840 (W.D.Pa.1988). Thus, in evaluating each motion, the Court must consider the facts and inferences in

the light most favorable to the nonmoving party. *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 431 (1st Cir.1992).

*Lowel–Light Manufacturing, Inc. v. Federal Deposit Insurance Corp.,* 848 F.Supp. 278, 281 (D.Mass.1994).

A federal tax lien arises when unpaid taxes are assessed. The lien continues until the tax liability is satisfied or the lien becomes unenforceable because of the running of the statute of limitations. 26 U.S.C. §§ 6321, 6322. Federal tax liens attach to "all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C. § 6321. What is "property" for purposes of the lien is determined by state law. *Markham v. Fay,* 74 F.3d 1347, 1355–1356 (1st Cir. 1996). While a delinquent taxpayer's vested interest in a trust can ordinarily be attached, the matter becomes complicated when the taxpayer's interest is intermixed with the interests of other beneficiaries. Under federal law "a tax lien extends only to property or rights to property belonging to the delinquent taxpayer, and not to property belonging to innocent third parties." [9] *Markham,* 74 F.3d at 1356.

The IRS attacks the M & J Murray Family Trust on several fronts. The Murrays, it will be recalled, were the settlors and sole beneficiaries of the Trust. They were also two of the three trustees. Juliette Road constituted the entire corpus of the Trust. Because the Murrays, acting in concert, had the power at any time to terminate the Trust and reclaim their respective shares,[10] the IRS argues that the Trust was in essence a revocable trust. Thus, the IRS contends that the federal

---

**7.** There is no evidence that Michael Murray did so.

**8.** Judith testifies that she and Michael "have not resumed [their] relationship as husband and wife, either legally or de facto." J. Murray Aff. ¶ 18.

**9.** Section 6323 of the Code sets out the interests that have priority over a § 6321 lien.

Consistent with the statute, the IRS has stipulated to the priority of the Eastern Bank and Household Finance mortgages.

**10.** Article III of the Trust states that "at least two of the Trustees shall act with respect to the administration of the Trust hereunder or to exercise any of the powers hereby conferred."

tax lien attached to Michael Murray's one-half interest in the property without regard to the niceties of trust. See *Markham*, 74 F.3d at 1357 ("If Fay revoked the trust, or amended it to make herself the sole beneficiary, the legal title and equitable interest would merge and thereby terminate the trust").

Alternatively, the IRS argues that the Trust was a sham because the Murrays "continued to treat [Juliette Road] in exactly the same manner after the transfers as they did before that time, quite simply, as their own." *F.P.P. Enterprises and D & S Trust v. United States*, 830 F.2d 114, 117 (8th Cir.1987).[11]

> They lived there together continuously from the time they purchased it in 1976 to [the] time that they separated in the spring of 1987. Mrs. Murray continued to live there after the separation. They took the mortgage interest and real estate tax deductions on their personal returns.... In short, the Murrays never acted toward the Property in any way except as its true owners.

IRS Memorandum, at 8–9 (citations omitted).

Finally, the IRS argues that the transfer of Juliette Road to the Trust was a fraudulent conveyance. According to Judith Murray, the residence was put in trust so that

> if [she] got into an accident and the limits of my [insurance] policy had expired that they could not come and attach my property. The same thing if anybody got ,injured in the pool, they could not come and take the house at 9

Juliette Road, attach the property, whatever.[12]

See Plaintiff's Ex. 10, at 39. Under the Uniform Fraudulent Conveyance Act, G.L. c. 109A, § 7,

> every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

The IRS contends that § 9(1)(b) of the UFCA permits it to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." [13]

Merely because property is held in trust, it is not necessarily immune from creditors. It has long been the law in Massachusetts "that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors." *Ware v. Gulda*, 331 Mass. 68, 70, 117 N.E.2d 137 (1954), quoting *Merchants National Bank v. Morrissey*, 329 Mass. 601, 605, 109 N.E.2d 821 (1953). See *Restatement (Second) of Trusts* § 156. This is true even when a settlor-beneficiary encumbers the trust with a spendthrift provision. *State Street Bank and Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 636, 389 N.E.2d 768 (1979). It is also true that where the powers of the trustee may only be exercised at the direction of the beneficiary, the trust may be penetrated by the beneficiary's creditors. *Zuroff v. First Wisconsin Trust Co.*, 41 Mass.App.Ct. 491, 493, 671 N.E.2d 982 (1996). And finally, where a settlor-beneficiary names herself as the sole trustee with unlimited powers over the corpus, a creditor may reach through the trust to its assets. *Markham,*

---

11. The government notes that in conjunction with her divorce action, Judith Murray filed an attachment against "the right, title and interest" held by Michael Murray in the Juliette Road property, thus evidencing her belief that the Trust had no valid existence.

12. Michael Murray refused to answer the IRS' questions regarding the purposes of the Trust. Plaintiff's Ex. 13. Based upon this refusal, the IRS contends that an adverse

inference may appropriately be drawn. Cf. *F.D.I.C. v. Elio*, 39 F.3d 1239, 1248 (1st Cir. 1994).

13. Because Judith Murray is not a "purchaser for fair consideration without knowledge of the fraud," the IRS asserts that any purported conveyance of Michael's interest in Juliette Road to Judith must be disregarded. IRS Memorandum, at 16–17.

74 F.3d at 1357 ("The touchstone of the analysis ... is whether the trust instrument as a whole gives [the trustee] the power to eliminate the interests of all others in the trust"). The result is different, however, where the beneficiary of a trust, even a settlor-beneficiary who serves as the sole trustee, is unable under the terms of the trust instrument to treat the trust assets as if the trust did not exist.

> Although Fay is the settlor, trustee and a beneficiary, the trust instrument gives her no power to unilaterally alter, amend or revoke the trust, limits her discretion as trustee to distribute income, and limits her right to receive income as a beneficiary to an amount in proportion to the shares owned by her. Fay's rights and powers therefore were not so centralized as to make the entire trust property her own.

Id., at 1363.

■ The instrument creating the M & J Murray Family Trust names three trustees imbued with broad powers to manage the trust assets.[14] Michael Murray did not, however, as a trustee, have the unilateral right to alter or amend the terms of the trust instrument. While it is true that Michael Murray, acting in concert with Judith Murray, had total control of the assets of the trust, this is legally irrelevant. It is only when a trustee beneficiary has the unilateral power to extinguish the interests of his co-beneficiaries that the separation of legal and equitable title is destroyed. A.W. Scott, *The Law of Trusts*, § 150.1 (1967).

The IRS's second argument, that the Trust was simply an alter ego for the Murrays, depends for its authority on *F.P.P. Enterprises*, supra. The trusts that figured in *F.P.P. Enterprises*, however, were business trusts, organized without regard for the requirements of state law, and for the admitted and sole purpose of sheltering the settlors' assets from creditors. Of even greater significance, the trustees in *F.P.P. Enterprises* had no control over the trust property. Control rather was vested exclusively in the beneficiaries. 830 F.2d at 117. The trusts, in other words, were de facto nominee trusts whose assets were reachable by creditors under Wyoming law just as they would be under Massachusetts law. See *Zuroff*, supra, 41 Mass.App.Ct. at 493, 671 N.E.2d 982 (a beneficiary's interest in a nominee trust may be seized to satisfy a tax liability). The M & J Murray Family Trust, on the other hand, is an inter vivos trust, created under a proper instrument and duly recorded. See *Markham*, 74 F.3d at 1357 ("Traditionally, Massachusetts has given full effect to inter vivos trusts").

■ The IRS's final argument, that the transfer of Juliette Road to the Trust was a fraudulent conveyance rests on Judith Murray's admission that one of the reasons for creating the Trust was to put Juliette Road beyond the reach of a potential tort claimant. If that had been the only reason, the IRS's argument would be conclusive (as it was in *F.P.P. Enterprises*). However, Judith Murray testified that the Trust was created for an additional legitimate purpose: to provide an ownership entity for the couple's planned real estate investments.[15] While the Murrays' investment ambitions were never realized (plausibly because of Michael Murray's ensuing financial difficulties), absent any evidence that their stated intentions in this regard were "false when made," there is no basis upon which the Trust can be disregarded. In sum, I conclude that the Trust is a valid legal entity.

■ Given the validity of the lien and the validity of the Trust, the issue remains whether the lien attaches to Michael Murray's interest in Juliette Road. A federal tax lien as a rule does not attach to

---

**14.** "Broad powers are typically conferred on a trustee as an effective way to manage trust property." *Markham*, 74 F.3d at 1357.

**15.** This testimony is corroborated by the trust instrument's statement of purpose.

property that the delinquent taxpayer has no present right to receive. *United States v. Cohn*, 855 F.Supp. 572, 576–577 (D.Conn.1994). On the other hand, it does attach to a taxpayer's vested right in a trust.

> [W]hether a right in a trust has vested depends on "whether, in substance, the interest is sufficiently established to constitute an interest or right which has accrued to its holder," that is, whether it is subject to defeat only by biological events, in which case the right is vested, or whether it is subject to defeat by another person's decision to exercise a power that he or she holds, in which case the right does not vest until the person holding the power can no longer exercise it.

*Markham*, 74 F.3d at 1365 (internal citations omitted). The right of a beneficiary to have his share of the trust corpus paid over to his successors upon his death, free of trust, is under Massachusetts law, a present right to property. See *Forbes v. Snow*, 245 Mass. 85, 91–92, 140 N.E. 418 (1923); *Alexander v. McPeck*, 189 Mass. 34, 44, 75 N.E. 88 (1905). Similarly, in *Markham*, the Court found that the trustee-beneficiary's (Fay) right to receive annual distributions until her death or the termination of the trust was a presently vested property right. 74 F.3d at 1364. On the other hand, Fay's right to the corpus was not vested because she could not convey it to a stranger without the co-beneficiaries' consent. Id. Moreover, she could receive her share of the liquidated assets during her lifetime only if a majority of the beneficial shareholders voted to terminate the trust; otherwise, her executors, administrators or assigns succeeded to her rights upon her death. 74 F.3d at 1364–1365. Consequently, Fay's interest in the corpus was "too ethereal" to be a present right to property. 74 F.3d at

1365. This did not mean, however, that the IRS's lien was of no effect. "The lien will attach ... upon Fay's death to whatever beneficial interest [in the corpus] she holds at that time, again assuming the tax debt remains unpaid." Id.

 Under Massachusetts law, a properly constituted testamentary or inter vivos trust cannot be prematurely terminated to pay a beneficiary's debt to a creditor (although the beneficiary's right to any eventual distribution from the trust corpus may be vested in the creditor to be paid over when the trust instrument expires). *Forbes*, 245 Mass. at 92–93, 140 N.E. 418. The M & J Murray Family Trust provides that the Trust will expire on January 9, 2001. At that time the corpus will be divided equally between Michael and Judith Murray "if they shall be living." Plaintiff's Ex. 4, Art. II, ¶ 3. That Michael's right to a share in the distribution is contingent is legally irrelevant. Under Massachusetts law, a "vested interest in a contingent right" is property reachable by an attachment. *Clarke v. Fay*, 205 Mass. 228, 235–236, 91 N.E. 328 (1910) (analyzing a remainder interest accruing to a debtor on the contingency that he should survive his father). Thus, the IRS's lien, which was recorded before the trustees purported to transfer Juliette Road to Judith Murray, is impressed on Michael's beneficial interest in the trust corpus and will attach to that interest when the Trust expires in 2001, unless the Trust is terminated earlier by the trustees or the tax debt is paid.[16] (The IRS, in the meantime, would be entitled to any distribution of income from the Trust to Michael Murray, although as a practical matter, none is likely to be made).

 Judith Murray, however, argues that Michael's interest in the Trust was either dissipated or transferred to her be-

---

**16.** While the trustees have broad powers in the interval over the trust corpus, their actions are constrained by their fiduciary obligations to Michael Murray as a beneficiary and by the weight of Massachusetts law obligating his assets to his creditors. *Ware*, 331 Mass. at 71, 117 N.E.2d 137. See also *In re Landry*, 226 B.R. 507, 512–513 (Bankr. D.Mass.1998).

fore the IRS lien arose. She first contends that Michael's failure to repay the $26,714 loan guaranteed by the Trust exhausted his rights as a beneficiary. While the trustees had the power (within the constraints of fiduciary duty) to remove Michael as a beneficiary, to do so required

> an instrument in writing executed and duly acknowledged in the manner required for deeds and filed at the appropriate Registry of Deeds where any land, if any, conveyed to this Trust lies, and such change, modification, alteration or termination shall become effective upon said filing with the Registry of Deeds.

Plaintiff's Ex. 4, Art. VII ¶ 2. There is no evidence that any writing extinguishing Michael's rights as a beneficiary was ever recorded. See Restatement (Second) of Trusts § 139 (1959) ("If by statute it is provided that all grants and assignments of any trust of land shall be in writing, signed by the party granting or assigning the same, a transfer of the interest of a beneficiary of a trust of land is not enforceable, unless the provisions of the statute are complied with").

■ In the alternative, Judith Murray argues that the Separation Agreement, executed prior to the IRS lien, transferred Michael's beneficial interest in Juliette Road to her. Whether a separation agreement takes effect on execution is governed by the intent of the parties. *Pavluvcik v. Sullivan*, 22 Mass.App.Ct. 581, 584, 495 N.E.2d 869 (1986). The Murrays maintain that they did intend the Agreement to have immediate effect. However, the Agreement explicitly states that "[t]he Husband agrees to convey to the Wife, within thirty (30) days, all his right, title and interest in the real estate located at 9 Juliette Road, Saugus, County of Essex, Massachusetts." Art. II(B). There is no evidence that Michael ever did so, nor was any such conveyance ever recorded. What was recorded was the transfer of Juliette Road to Judith Murray on April 5, 1989,

well after the IRS had recorded its lien. Consequently, the transfer was a nullity.

■ Finally, Judith Murray claims that Michael's interest in the Trust should be construed as personal rather than real property, based on the recital in the Separation Agreement that "the parties ha[d] divided their personal property between them to their personal satisfaction." Art. II(A). When a "trust instrument directs that the trust assets be liquidated upon termination of the trust, the beneficiaries' interests are personal property from the trust's inception." *Markham,* 74 F.3d at 1361. However, the M & J Murray Family Trust instrument does not direct a liquidation of the trust corpus, merely a return of the legal title to the Trust assets to the Murrays.

## ORDER

For the foregoing reasons, the court *CONFIRMS* the validity of the lien held by the Internal Revenue Service on Michael Murray's beneficial interest in the M & J Murray Family Trust. The court also *AFFIRMS* the validity of the Trust. The court further *DETERMINES* that Michael Murray's one-half beneficial interest in the Trust has not been dissipated and that any purported transfer of Michael's interest in the assets of the Trust to Judith Murray is a nullity. The IRS's Motion for Summary Judgment is therefore *ALLOWED* in part. Judith Murray's request that the Complaint be dismissed is *DENIED*. The IRS, as the prevailing party, shall submit a proposed form of judgment within fourteen (14) days of this ORDER.

SO ORDERED.

*MEMORANDUM AND ORDER ON DEFENDANT JUDITH E. MURRAY'S OPPOSITION TO ENTRY OF JUDGMENT AND MOTION TO RECONSIDER*

■ The motion to reconsider will be *ALLOWED* in part. On further reflection, I am persuaded by defendant Judith Mur-

ray's argument that the reasoning of my March 5, 1999 Memorandum is flawed in one respect—the finding that Michael Murray's interest in the M & J Murray Family Trust had vested prior to the filing of the federal tax lien. That determination was based on the holding of *Clarke v. Fay*, 205 Mass. 228, 235–236, 91 N.E. 328 (1910), that under Massachusetts law, a vested interest in a contingent right is reachable by a creditor (assuming that its value can be ascertained by sale or appraisal). While *Clarke* is good law, on closer reading of the facts of the case, it is distinguishable. In *Clarke*, the right of the defendant to share in the fund established by his testator grandfather was "fixed" in the sense that the defendant "could by no contingency be deprived of the certainty of sharing in the fund, provided that he was alive at the death of his father." Id., at 235, 91 N.E. 328. While at the expiration of the Murray Trust, Michael will be entitled to one-half of the remaining corpus so long as he is alive, it is true, as Judith Murray points out, that in the interval, a majority of the Trustees could oust Michael as a beneficiary. Thus, the Murray Trust is, as defendant contends, more like the Highland Avenue Nursing Home Trust in *Markham v. Fay*, 74 F.3d 1347, 1360–1366 (1st Cir.1996), than the trust described in *Clarke*. While the March 5 Memorandum, at 10 (quoting from *Fay* ) correctly states the Massachusetts rule as to when a property right in a trust vests, I am now convinced that I incorrectly applied the rule to the Murray facts in the penultimate sentence of page 11. Like Fay, Michael Murray has no title to the trust property or right under the trust instrument to call for a partition. Nor does he have the right to receive or withdraw any part of the trust principal. Id., at 1364. While the March 5 Memorandum correctly concluded that the tax lien attached to Michael's presently vested right to receive a share of any distribution of income from the Trust, as *Fay* makes clear, "a federal tax lien . . . does not attach to the trust corpus when [the taxpayer] has no present right to receive it." Id.[1]

This, however, does not end the matter. The federal tax lien has priority in time over the purported transfer of Michael's interest in Juliette Road to Judith.[2] The issue remains whether the Trustees acted lawfully in attempting to extinguish Michael's beneficial interest in the Trust, or whether they were obligated by their fiduciary duty to Michael and his creditors to refrain from doing so. On this issue, I invite the comments of the parties. Cf. *Fine v. Cohen*, 35 Mass.App.Ct. 610, 617, 623 N.E.2d 1134 (1993) ("Even where there are broad discretionary powers, a trustee may not exercise his or her discretion so as to shift beneficial interests in the trust").

### ORDER

For the foregoing reasons, the Motion to Reconsider is *ALLOWED* in part. The court vacates so much of its March 5, 1999 Memorandum and Order as rested on a determination that Michael Murray had a vested interest in the M & J Murray Family Trust at the time the IRS perfected its lien. The court concludes instead that he did not, and that the IRS lien did not therefore attach to Michael Murray's one-half beneficial interest in the corpus of the Trust. The parties will have thirty (30)

1. "The possibility that Fay might receive a share of the trust corpus during her lifetime hinges on whether or not a majority of the holders of the beneficial shares vote to terminate the trust, and whether or not they decide to amend the trust by removing her as a beneficiary. Thus, it does not amount to a present right to property under Massachusetts law." Id., at 1365.

2. The nature of this transaction is not clear from the record. Attached to the Government's Memorandum is a deed (Exhibit 6) appearing to convey the entirety of Juliette Road to Judith Murray outright. If this is the case, then equitable and legal title in Michael's interest has merged in Judith, thus freeing Juliette Road from the Trust. The parties may wish to address the ramifications of this transaction.

days from the date of this *ORDER* to submit briefs to the court on the issue of whether the Trustees are constrained by their fiduciary duty from any attempt to extinguish Michael Murray's contingent interest in the corpus of the Trust, and whether the conveyance of the property in deed to Judith Murray is as a result null and void.

SO ORDERED.