# United States Court of Appeals

## For the First Circuit

No. 99-2028

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

JUDITH E. MURRAY,

Defendant, Appellant.

_____

MICHAEL E. MURRAY, EASTERN SAVINGS BANK,
HOUSEHOLD FINANCE CORPORATION, LEP PROFIT INTERNATIONAL
INCORPORATED,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

John C. Ottenberg with whom Ottenberg, Dunkless, Mandl & Mandl LLP was on brief for appellant.
Annette M. Wietecha, Tax Division, Department of Justice, with whom Paula M. Junghans, Acting Assistant Attorney General, Donald K. Stern, United States Attorney, and Kenneth L. Greene, Tax Division, Department of Justice, were on brief for the United States.

July 6, 2000

BOUDIN, Circuit Judge.  On November 21, 1988, the Internal Revenue Service made an administrative determination, called an assessment, that Michael Murray owed $105,243.06 for failure to pay over withheld income and Federal Insurance Contributions Act ("FICA") taxes due from his company, All Air Transportation Corp.  26 U.S.C. §§ 6201-03 (1994).  As of that date, a statutory lien arose in favor of the United States upon "all property and rights to property, whether real or personal," belonging to Michael Murray.  26 U.S.C. §§ 6321-22 (1994).  The central question in this case is whether that lien has attached, or will attach, to any interest of Michael Murray in the house located at 9 Juliette Road in Saugus, Massachusetts, and, if so, with what consequences.

The history can be briefly recounted.  Michael Murray and his then wife, Judith, purchased the Juliette Road property in 1976, taking title as tenants by the entirety.  In December 1980, they deeded the property to themselves and Frederick Chalifoux (Judith's stepbrother) as trustees of the M & J Murray Family Trust.  The terms of the trust made Michael and Judith equal beneficiaries and provided that the trust would be managed by a majority vote of the three trustees.

In April 1988, Judith Murray--anticipating divorce and predicting that the Juliette Road property would be awarded to her in the divorce proceeding--moved in state probate court for pre-judgment attachment of Michael's interest in the property.  See Mass. Gen. Laws ch. 208, § 34 (1998).  The probate court approved

-2-

an attachment in the amount of $180,000, and a writ of attachment was issued on April 12, 1988.

Later that year, in September 1988, Judith and Michael executed a separation agreement in which Michael agreed to convey his right, title and interest in the Juliette Road property to Judith within 30 days. Michael did not carry out that promise, and thereafter, on November 21, 1988, the IRS made the assessment against Michael Murray, described at the outset of this opinion, establishing a lien on whatever property he then possessed. On March 29, 1989, the day that the Murray divorce became final, the three trustees (Judith, Michael, and Frederick) deeded the Juliette Road property to Judith Murray, the deed being recorded on April 5, 1989.

On March 18, 1997, the government filed this action against Michael Murray, Judith Murray and three companies (who did or might have claims against the Juliette Road property), seeking to reduce to judgment the assessment against Michael Murray and to foreclose the lien on the Juliette Road property. See 26 U.S.C. § 7403 (1994) (action to enforce a lien). Now claiming taxes and interest due from Michael Murray in the amount of $225,964.02, the government claimed a lien on one-half the value of the Juliette Road property and asked that the property be sold with the proceeds being distributed as the court should determine. See id.

In due course, the government moved for summary judgment and Judith Murray cross-moved for summary judgment in her favor. (Michael Murray did not respond.) On March 5, 1999, the district

-3-

court rendered its initial decision, United States v. Murray, 73 F. Supp. 2d 29 (D. Mass. 1999), which it then revised in two decisions on further reconsideration dated May 7, 73 F. Supp. 2d at 37, and July 21, 1999, No. Civ.A. 97-10602-RGS, 1999 WL 1334883 (D. Mass. July 21, 1999). The final resolution was embodied in a separate judgment, dated July 21, 1999. United States v. Murray, No. Civ.A. 97-10602-RGS, 1999 WL 1334856 (D. Mass. July 21, 1999). The gist of what the district court did, so far as pertinent here, is as follows:

First, the court entered judgment against Michael Murray in favor of the United States for $239,206.63 plus interest. Murray, 1999 WL 1334856, at *1. Next, the judgment decreed that liens of the United States attach to "Michael Murray's beneficial interest in the M & J Murray Trust" and that the United States' liens "will attach directly to a one-half interest in the Juliette Road property upon the earlier of the termination of the Trust by the Trustees or its expiration on January 9, 2001." Id. Finally, the judgment provided that when the trust ended, the United States "may foreclose its liens on the one-half interest in the Juliette [Road] property and may request a sale of the entire property." Id.

In the decisions that led up to the final judgment, the district court rejected the government's claim that the trust was fraudulently established, Murray, 73 F. Supp. 2d at 34-35, but the court also ruled that the trustees' purported transfer of the Juliette Road property in March 1989 was a nullity, id. at 37.

-4-

Neither side argues explicitly for overturning these conclusions, although Judith Murray continues to believe that the purported transfer was effective. In a further ruling directed to the trustees' obligations in the period between the entry of the district court judgment and the end of the trust (or payment of Michael Murray's tax debt), the district court said: "[I]n the interval, the trustees' actions with regard to the Trust and its corpus are constrained by their fiduciary obligations to Michael Murray and his creditor and by the weight of Massachusetts law obligating his assets to his creditors." Murray, 1999 WL 1334856, at *1; see also Murray, 73 F. Supp. 2d at 36 n.16.

Judith Murray now appeals from the final judgment entered by the district court. The government has not cross-appealed; despite its initial aim to foreclose on and sell the property immediately, it now appears to be satisfied with waiting to foreclose until the end of the trust, so long as the trust property and Michael Murray's beneficial interest in the trust are preserved intact in the interval.

Judith's main attack on the district court's judgment rests on the proposition that Michael had no interest in the trust property sufficient to permit a lien to attach or be foreclosed. Obviously, as trustee, Michael (together with his co-trustees) held legal title to 9 Juliette Road when the initial assessment was made against him. But Judith properly says, and the government does not contest, that a lien against Michael's "property and rights to property" under the federal statute refers to interests held by him

in his personal capacity and not those that he might hold as a trustee for others.  See Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996).  (Whether his status as settlor and beneficiary has some importance is a different question, to which we will eventually turn.)

What Michael had personally after the trust was first created was a beneficial interest in (1) half the income and (2) half the corpus of the trust, which corpus included the Juliette Road property.  (Under the terms of the trust, he had a further contingent interest in Judith's share of the corpus if he survived her, and his own beneficial interest in the corpus terminated on his death if he predeceased Judith.)  Judith says that by the time of this suit, she had a greater equitable claim to trust income and property, because of a loan by the trust to Michael and her greater contribution to maintaining trust assets.  But subject to these claims (to which we return later in the opinion), Michael remained on paper a "beneficial" half owner of the trust's income and corpus.

If this beneficial interest was what Michael had in January 1981 when the trust was created, then it is clear to us, as it was to the district court, that he continued to possess it through November 1988 when the government's lien first arose on his "property" or "rights to property."  Judith does not claim that her April 1988 pre-divorce attachment has priority over the tax lien,[1]

_____

[1]Perhaps the April 1988 pre-divorce attachment was perfected for purposes of state law by the divorce decree (which incorporated the settlement agreement in which Michael promised to convey his

-6-

and Michael's September 1988 promise to convey to Judith his interest in the Juliette Road property did not effect that conveyance unless and until the promise was performed.  See Restatement (Second) of Trusts § 134 cmt. b (1959); see also Pavluvcik v. Sullivan, 395 N.E.2d 869, 872 (Mass. App. Ct. 1986).  As for his effort in March 1989 to convey the Juliette Road property to Judith, this occurred after the government's lien had attached to his beneficial interest in the trust, if it did so--the issue to which we now turn.[2]

It is now settled that under the federal tax lien statute, state law determines what interest a taxpayer possesses with respect to property; the federal statute creates no property rights.  United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985).  But federal law determines whether that state-law-created interest constitutes "property" or "rights to property" under the federal lien statute.  Id. at 727; see also Drye v. United States, 120 S. Ct. 474, 481 (1999).  In other words, the "bundle of rights" that Michael had vis-à-vis the trust income and

_____

interest in the Juliette Road property).  But as the divorce decree was issued after the IRS filed notice of the tax lien, the tax lien nonetheless takes priority.  See 26 U.S.C. § 6323(a) (1994); United States v. Dishman Indep. Oil, Inc., 46 F.3d 523, 526-27 (6th Cir. 1995).

[2]If the government's lien attached to an unconditional interest in the trust corpus, it is clear enough that the lien could not be defeated by a post-lien transfer of the corpus without consideration.  Cf. Rodriguez v. Escambron Dev. Corp., 740 F.2d 92, 93 (1st Cir. 1984) (tax lien continues to encumber land even after legal transfer).  To the extent Judith claims that Michael's rights were conditional, i.e., subject to divestment by the trustees, the trustees' ability to act adversely to the lien is limited as discussed below.

corpus, including the Juliette Road house, depends on Massachusetts law; but regardless of what label Massachusetts may attach to that bundle, federal law determines whether this interest rises to the level of "property" or "rights to property" for purposes of the federal tax lien statute.  As the Supreme Court explained in Drye v. United States, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." 120 S. Ct. at 481.

Given the purposes of the tax laws, one might expect "property and rights to property" to be construed broadly, and it is, Drye, 120 S. Ct. at 480, but there are limits that reflect both common usage and policy.  For example, the lien would likely not attach to land owned by a still-living relative of Michael, or to Michael's expected inheritance of it, even if the relative had provided in his will that the land would go to Michael on the relative's death.  See id. at 482 n.7.  It is not common to call Michael's interest in such land "property" (lawyers would call it an "expectancy"), and, practically speaking, if the tax lien were allowed to attach to such an interest, the relative might be expected thereafter to alter the will.

Unfortunately, no clear-cut definition of "property" is supplied by either the federal tax lien statute or the governing Supreme Court cases.  Drye, the most recent Supreme Court

pronouncement, suggests that transferability and pecuniary value are touchstones of "property" under the lien statute, but Drye then goes on to say that "transferability" may not be essential and "pecuniary value" is not necessarily enough. Id. at 482 & n.7. Elsewhere Drye refers to the taxpayer's ability to "control" the property. Id. at 483 (quoting Morgan v. Commissioner, 309 U.S. 78, 83 (1940)). In yet another case under the statute, the Court referred to the ability of the taxpayer to "enjoy" or "possess" the property during his own lifetime. United States v. Bess, 357 U.S. 51, 55-56 (1958). Perhaps the situations are too numerous and varied to permit a single comprehensive definition, and such elements--transferability, pecuniary value, control, enjoyment-- should be treated as among the relevant considerations in a highly fact-specific inquiry.

In arguing that Michael's interest in the trust was not "property," Judith's principal argument is that it was subject to being terminated by Judith and her stepbrother at any time under an article of the trust instrument, and this rendered the interest so contingent, uncertain or speculative that it did not constitute "property" or "rights to property" under the lien statute. The pertinent language of Article VII of the trust instrument, relating to termination and amendments of the trust, reads as follows: "Notwithstanding any provisions contained in this instrument, this Indenture of Trust may be changed, modified, altered or terminated, including a change in the identity of the Trustees, by an instrument in writing executed and duly acknowledged in the manner

required for deeds . . . ." Judith also relies on our decision in Markham v. Fay, 74 F.3d 1347 (1st Cir. 1996), for the proposition that a power in a third party to cut off rights to a trust corpus means that such an interest is not "vested" under Massachusetts law and is therefore not "property" to which a federal lien may attach.

Judith's reading of the trust instrument may well be mistaken. Whether the power to act by a two-thirds vote in administering the trust extends to an alteration in its terms could be disputed. One might reasonably expect very clear language before reading an instrument to permit a majority of trustees--one interested as a beneficiary and the other related to her--to terminate the interest of the other beneficiary in trust property that he settled. The language relied upon by Judith is far from crystal clear.[3]

However, even if we assume arguendo that Judith and her stepbrother could (prior to the attachment of the lien) have cut off Michael's interest, the outcome is the same. Markham does say that an explicit power in a third party to cut off a beneficiary from a residual interest in the corpus would make that an interest not yet "vested" under Massachusetts law and (according to Markham)

---

[3]Article III(2), dealing with "trustees," provides that "[a]t least two" shall act in administering the trust or exercising their powers, and Article IV lists various customary powers. The authority to alter the terms of the trust appears only in Article VII which refers to action by the "trustees" without specifying numbers. The common law rule is that private trustees must act by unanimity unless the trust instrument provides otherwise. Restatement (Second) of Trusts § 194 (1959).

therefore an interest too frail to support a lien.[4]  Markham, 74
F.3d at 1365.  However, Markham's holding on this point depended on
its assumption that the federal tax lien issue turned on whether
"under Massachusetts law . . . a right in a trust has vested . . .
."  Id.

What Drye now makes clear is that labels like "vesting"
and "nonvesting" under Massachusetts law are not determinative, and
that federal law determines whether an interest that exists under
state law is sufficiently substantial that it should be treated as
"property" or "rights to property" for purposes of the federal tax
lien statute.  Thus, even if we assume that Judith and her
stepbrother did have a right to take away Michael's interest in
income and corpus, the question remains whether their power to do
so--which had not been exercised before November 1988--meant that
Michael's interest in income, corpus or both was too insubstantial,
transitory or hollow to be attached.  We can find no Supreme Court
or circuit precedent directly on point.

An otherwise valuable pecuniary interest that can be cut
off at the absolute discretion of another person is an unusual
creature in the law, and the touchstones mentioned in earlier
Supreme Court decisions are not very helpful in characterizing
Michael's interest as property vel non.  Michael's interest in the
trust prior to November 1988 clearly had "pecuniary value" to him

---

[4]The Markham decision held the opposite with respect to
ongoing entitlement to interest income, Markham, 74 F.3d at 1364.
The district court on reconsideration rewrote its decree in an
attempt to make it conform more closely to what the district court
thought Markham required.  See Murray, 73 F. Supp. 2d at 38.

but was arguably subject to termination (if we assume that two of the trustees could cut if off); "transferability" of that interest was limited by a standard spendthrift clause, but this has no application to the government's claim as lienor or creditor;[5] "enjoyment" of the trust income and corpus was in principle available to Michael upon distribution but again subject to termination (on Judith's reading); and "control" of the property was formally in the hands of the trustees but subject to substantial constraints for Michael's benefit under state trust law, see Old Colony Trust Co. v. Silliman, 223 N.E.2d 504, 507 (Mass. 1967).

What seems to us decisive is that the Supreme Court did have occasion to deal with a different form of property equally subject to divestiture at the control of a third party, namely, a taxpayer's interest in a joint bank account which gave either account holder the right to withdraw the proceeds. In a square holding, the Supreme Court said that this interest of the taxpayer in the bank account, although it could be fully defeated by the other holder's withdrawal of the account proceeds, was (prior to such a withdrawal) nonetheless "property" or "rights to property"

---

[5]It is well-settled under trust law that this anti-alienation provision had no effect on the government for two separate reasons: both because Michael was settlor as well as beneficiary, Restatement (Second) of Trusts § 156(1) (1959); Cohen v. Commissioner of the Div. of Med. Assistance, 668 N.E.2d 769, 777-78 (Mass. 1996), cert. denied, 519 U.S. 1057 (1997), and because even if the trust had been created by a third party, spendthrift trust clauses are not enforceable against certain kinds of claims, including a claim by the United States against a beneficiary, Restatement (Second) of Trusts § 157(d) (1959).

-12-

of the taxpayer for federal tax collection purposes.  United States v. National Bank of Commerce, 472 U.S. 713, 724-26 (1985).

Given this decision, we hold that Michael's interest in income and corpus constitutes property for purposes of the federal tax lien statute, even if we assume arguendo that Judith and her stepbrother could have divested  Michael of his interest prior to November 1988.  This view does not impeach the result reached in Markham:  there, the trust property that we held could not be attached by the government could be enjoyed only after the taxpayer's death unless the trust was amended, Markham, 74 F.3d at 1365, and independent Supreme Court authority says that such an interest does not constitute attachable property under the tax lien statute, United States v. Bess, 357 U.S. 51, 55-56 (1958).

Once the government's tax lien did attach in November 1988, Judith and her stepbrother were not allowed to terminate Michael's interest even if the trust instrument were read as they propose.  The Massachusetts cases have held that if a trustee otherwise has discretion not to distribute trust assets to a beneficiary's creditors, the trustee cannot exercise that discretion where the trust is self-settled.  Ware v. Gulda, 117 N.E.2d 137, 138 (Mass. 1954) (adopting Restatement (Second) of Trusts § 156(2) (1959)); Restatement (Second) of Trusts § 156(2) (1959); 2A Scott & Fratcher, The Law of Trusts § 156.2, at 175-78 (4th ed. 1987).  The purported transfer of the trust property to Judith in March 1989 was thus ineffective.

-13-

The reason for the rule is that "a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors," Merchants Nat'l Bank v. Morrissey, 109 N.E.2d 821, 823 (Mass. 1953). "It is against public policy to permit a man to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it." 2A Scott & Fratcher, supra, § 156, at 167; see also Cohen v. Commissioner of the Div. of Med. Assistance, 668 N.E.2d 769, 777 (Mass. 1996) (explaining that the rule for self-settled trusts is addressed to an arrangement "concocted for the purpose of having your cake and eating it too"), cert. denied, 519 U.S. 1057 (1997).

On appeal, Judith argues that even if a tax lien did attach to Michael's interest in the trust and restricted the trustees' power to diminish that interest, Michael's interest is itself subject to an equitable reduction to account for a loan made by the trust to Michael and allegedly disproportionate expenditures made by Judith to maintain the trust assets. Indeed, Judith asserts that these adjustments would essentially wipe out Michael's one-half share in the trust, so an order to sell the property makes no sense. The government says, and we agree, that whatever equitable claims Judith may have can be determined if and when a foreclosure is attempted and there is property to distribute.

Next, Judith says that under United States v. Rodgers, 461 U.S. 677 (1983), the district court has, and should have exercised, equitable discretion to refuse to order a sale. The Rodgers decision says that under the tax lien statute, the district

-14-

court has limited discretion to refuse to order a sale in order to protect the interests of innocent parties.  Id. at 709-11.  The government says that although the district court did not explicitly address the Rodgers factors, it must have implicitly found that those factors are consistent with an order of sale and that this was not an abuse of discretion.[6]

As we read the district court's judgment, it has done no more than say that when the trust terminates, the United States may foreclose on Michael's one-half interest in the Juliette Road property "and may request a sale of the entire property pursuant to 26 U.S.C. § 7403(c) and United States v. Rodgers."  United States v. Murray, No. Civ.A. 97-10602-RGS, 1999 WL 1334856 (D. Mass. July 21, 1999) (emphasis added).  In other words, just as the government concedes that Judith's "loan and advances" claim has been preserved, so the court's judgment defers until the occasion for a sale the question whether such a sale should be ordered and would be consistent with the Rodgers factors.

Finally, Judith suggests, without much vigor, that the district court should have considered her equitable interests and the Rodgers factors before entering the decree, but she makes no effort to explain why she is prejudiced by the deferral.  Her

---

[6]Citing United States v. Davenport, 106 F.3d 1333, 1338 (7th Cir. 1997), the government also says that the Rodgers factors need be considered only if the court decides not to order a sale, but this makes no sense to us.  Where a party has asked the court to exercise its discretion to refuse to order a sale under section 7403, Rodgers directs the court to consider various factors to determine whether or not to do so.  See, e.g., Rodgers, 461 U.S. at 710 ("First, a court should consider . . . ." (emphasis added)).

-15-

argument that no sale should be ordered if it would produce nothing for the government sounds reasonable on its face; but as we read the district court's judgment, Judith is free to renew this argument before any sale is actually ordered. If conditions change and make an earlier determination critical, Judith may apply to the district court to address the issues it has reserved. In all events, no sale may be ordered until the district court resolves the equitable claims and the <u>Rodgers</u> issues.

<u>Affirmed</u>.